**STATE of Iowa, Appellee,**

v.

**Matthew T. JACKSON, Appellant.**

**No. 55370.**

Supreme Court of Iowa.

Sept. 19, 1973.

Wilford M. Forker, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and Zigmund Chwirka, Woodbury Co. Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and UHLENHOPP, JJ.

LeGRAND, Justice.

This appeal raises two issues which defendant says were erroneously decided against him at the trial level and each of which he claims deprived him of a fair trial. One involves the manner in which certain physical evidence was taken from his hotel room; the other challenges a ruling denying defendant's effort to introduce evidence to impeach one of the state's witnesses. We reverse on the search and seizure question and remand for a new trial.

The facts upon which our conclusion rests are here set forth. On November 16, 1968, members of the Sioux City Police Department were called to the Chicago House Hotel in that city to investigate an assault and battery which had been committed against one of the women residents there. Upon arrival, they received information the defendant, Matthew T. Jackson, was the assailant. Since he, too, resided at the hotel, the officers then solicited the help of the hotel clerk, who admitted them to defendant's room by means of a pass key. Defendant was not there. While in the room, the officers noticed a knife on the bed. They neither touched nor took it, since, according to their testimony, it appeared unlikely the knife had been used in

commission of the assault and battery, the only crime they were then aware of.

During the course of this investigation, a second crime was discovered—the murder of one of the other women residents of the hotel. Of course, the investigation then intensified and other officers, who had been told of the bloody knife, made a second entry into defendant's hotel room—again with the help of the room clerk—and took possession of the weapon, which was subsequently used against defendant at his trial.

■ It is claimed the knife was seized illegally in violation of the defendant's 4th Amendment right to be secure against unreasonable search and seizure, which has been applicable to state trials through the 14th Amendment since Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). See State v. Osborn, 200 N.W.2d 798, 804 (Iowa 1972).

■ I. In considering this complaint, we start with the premise all searches and seizures must be conducted pursuant to a search warrant issued on probable cause unless circumstances are shown to excuse compliance with that constitutional restriction. State v. King, 191 N.W.2d 650, 654 (Iowa 1971) and citations; Coolidge v. New Hampshire, 403 U.S. 443, 452, 454, 91 S.Ct. 2022, 2031, 2032, 29 L.Ed.2d 564, 575, 576 (1971); McDonald v. United States, 335 U.S. 451, 452, 69 S.Ct. 191, 192, 93 L. Ed. 153, 157 (1948).

■ There are three exceptions to this rule generally recognized by the courts. No warrant is necessary when the search and seizure, within prescribed limits, are incident to a lawful arrest; the warrant requirement may be waived by an informed and voluntary consent; and, third, existence of exigent circumstances may relieve an officer from the obligation to obtain a warrant if it is impracticable to do so.

■ Since no warrant was obtained in the case now before us, seizure of the alleged murder weapon depends for its legality upon one of the three exceptions just set out. We can quickly dispose of the first two. There was no arrest, and there was no consent, although the state argues somewhat dispiritedly that consent of the hotel clerk made the entry into defendant's room and seizure of the knife valid. However, this is no longer arguable, if indeed it ever was. State v. Smith, 178 N.W.2d 329, 332 (Iowa 1970); United States v. Goldenstein, 8 Cir., (1972), 456 F.2d 1006, 1009; Stoner v. California, 376 U.S. 483, 487, 84 S.Ct. 889, 892, 11 L.Ed.2d 856, 860 (1964); Chapman v. United States, 365 U.S. 610, 613, 81 S.Ct. 776, 778, 5 L.Ed.2d 828, 832–834 (1961); United States v. Jeffers, 342 U.S. 48, 50, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951).

We, therefore, reach the third exception —existence of exigent circumstances—to test the validity of the seizure in question. A review of the evidence and of the surrounding circumstances leads us to the conclusion the seizure was invalid and the conviction must be reversed.

It is necessary, first, to isolate the exact circumstances which decide this issue, since there were *two* entries into defendant's room and *two* occasions upon which the knife was observed by the investigating officers.

We disregard the first entry since the knife was not then disturbed and since the officers say there was then no reason for taking it. Once it was determined defendant was not there, the first intrusion into his room ended, and the room clerk locked the door. The state's right to use the evidence in question depends on the validity of the second entry.

As already mentioned, this took place after the officers had discovered the murder. At their request, the room clerk again unlocked the room for the police.

They then knew the knife was there because Officer Rubis, who first observed it, had passed this information along to Assistant Chief White. It is also fair to say they knew defendant was not in his room. In fact, they were then searching for him elsewhere to place him under arrest.

■ Exigent circumstances sufficient to justify a search and seizure without a warrant usually include danger of violence and injury to the officers or others; risk of the subject's escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed.

Since defendant was not present and since he could not have returned to his room without being subject to immediate arrest, none of these saving conditions existed when the seizure was made. United States v. Goldenstein, 8 Cir., 456 F.2d 1006, 1010 (1972); McDonald v. United States, 335 U.S. 451, 454, 69 S.Ct. 191, 193, 93 L. Ed. 153, 158 (1948); cf. Chimel v. California, 395 U.S. 752, 761, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685, 693 (1969). See also Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900, decided May 29, 1973.

■ In this connection it is important to keep in mind that knowledge of what evidence will be unearthed does not excuse failure to obtain a warrant. Here, of course, the officers knew the knife was in the room; but this certainty of what was there does not validate the warrantless seizure of the weapon. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chapman v. United States, supra, 365 U.S. 613, 81 S.Ct. 778, 5 L.Ed.2d at 831, 832; Lustig v. United States, 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819, 1824 (1946); cf. Johnson v. United States, 333 U.S. 10, 13, 15, 68 S.Ct. 367, 368, 369, 92 L.Ed. 436, 440, 441 (1948).

■ This is not a "hot pursuit" case as was Warden v. Hayden, 387 U.S. 294, 298, 299, 87 S.Ct. 1642, 1645, 1646, 18 L.Ed.2d 782, 787, 788 (1967), where the necessity for immediate search made impracticable any effort to obtain a warrant. Neither is it within the purview of the "plain sight" doctrine, which permits an officer who is rightfully present to seize what is open and visible. The plain sight rule, however, presupposes a valid entry into defendant's room. Coolidge v. New Hampshire, supra, 403 U.S. 466, 91 S.Ct. 2038, 29 L.Ed.2d at 583; State v. King, supra, 191 N.W.2d at 655; State v. Brant, 260 Iowa 758, 763, 150 N.W.2d 621, 625 (1967); State v. Polton, 259 Iowa 435, 442, 143 N.W.2d 307, 311 (1966). See also Annotation at 29 L. Ed.2d 1067, 1075, where this statement appears:

> "If law enforcement officers anticipate before going to a particular place that they will find certain incriminating evidence there, and if there is no substantial danger that taking the time to obtain a valid warrant will result in the disappearance of the evidence, the officers must obtain a valid warrant authorizing the seizure of such evidence, exigent circumstances justifying the failure to obtain a valid warrant in such a situation are lacking, and the mere fact that the evidence which the officers anticipated seizing at the particular place turns out to be in plain view when they arrive there cannot justify their seizure of the evidence without their first having obtained a valid warrant."

We met this same situation in State v. Smith, supra, 178 N.W.2d at 332, where we said:

> "A warrantless search of a tenant's room, although consented to by a landlord who had been given some authority by the tenant to enter the room, is illegal and violative of tenant's Fourth Amendment constitutional rights * * *

> "We recognize in a situation where police officers are lawfully admitted to private premises they can seize what is in plain view, and not be subject to the charge that such actions were searches without warrant. This presupposes of

course the entry or admittance is lawful. * * * This rule applies only on the condition the officers are *lawfully* admitted to the private premises and focuses the issue in this case." (Emphasis in original.)

See also State v. Levy, 160 N.W.2d 460, 468, 469 (Iowa 1968).

■ Under the record before us, we hold the officers had no right to enter defendant's room without a warrant, and it follows they had no right to seize the telltale knife. No risk of violence, no danger of escape, no possibility of destruction of evidence was involved. As pointed out in United States v. Jeffers, 342 U.S. 48, 50, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951) and in United States v. Goldenstein, supra, 456 F.2d at 1010, all of these perils could have been protected against by the simple expedient of posting a guard at the hotel room door until a warrant was obtained.

We do not foreclose, of course, the right of the state to show other exceptional circumstances which might in a particular case excuse it from complying with the warrant requirements of the 4th Amendment. However, there was no such evidence here.

A careful review of the evidence discloses beyond doubt that no warrant was obtained solely to suit the convenience of the officers. There are numerous decisions that this is not enough. We cite only a few of them. Chapman v. United States, supra, 365 U.S. 615, 81 S.Ct. 779, 5 L.Ed.2d at 832, 833; McDonald v. United States, supra, 335 U.S. at 454, 69 S.Ct. at 193, 93 L.Ed. at 158; State v. Findlay, 259 Iowa 733, 739, 740, 145 N.W.2d 650, 654 (1966); Johnson v. United States, supra, 333 U.S., at page 15, 68 S.Ct. at page 369, 92 L.Ed. at page 441.

It is unfortunate that this evidence must be excluded. We can only repeat what we said in State v. Johnson, 203 N.W.2d 126, 128 (Iowa 1972) about the necessity for police officers to observe the constitutional mandates in regard to search warrants. Too often the fruits of diligent investigation are forfeited by a failure to do so. See United States v. Jeffers, supra, 342 U.S. at page 50, 72 S.Ct. at page 95, 96 L. Ed. at page 64.

We believe it was reversible error to admit the evidence illegally taken by the police. Defendant therefore must have a new trial.

II. Defendant complains, too, because he was not permitted to introduce hearsay testimony on cross-examining Officer O'Keefe. Since there must be a retrial, it is necessary that we dispose of this issue.

After defendant's arrest, George Landers, a resident of the hotel where the crimes occurred, went to the police station where he viewed defendant through a one-way mirror and, according to Officer O'Keefe, identified him as the person he had seen near the room of the slain lady. Several days before trial, Mr. Landers, an elderly man, died of natural causes.

In the meantime, defendant's counsel had obtained a court reporter's statement from Mr. Landers under oath in which he allegedly denied having identified defendant at the police station. No representative of the state was present when the statement was taken; there was no opportunity to cross-examine; and the statement was taken merely as part of defense counsel's preparation for trial.

During the trial, Officer O'Keefe testified Landers had viewed defendant at the police station. He did not state, nor was he asked, anything about the results of that procedure; and, of course, any such evidence would have been excludable as hearsay.

■ On cross-examination, defense counsel questioned Officer O'Keefe concerning what he told defendant about the police station identification. The officer admitted telling defendant Landers had identified him, which, according to the

court reporter's statement, Landers denied having done. Defendant tried in vain to introduce the transcript of this sworn statement made by Landers shortly before his death. He assigns this as error. We believe the trial court ruled correctly.

Defendant concedes the proffered statement was hearsay, but argues it should be admissible because of its importance to the defense and because Landers' untimely death made him unavailable at trial.

We might say in passing that the matter assumed some importance only because of defense counsel's cross-examination. Until then, it had been mentioned only obliquely, if at all. Under the circumstances here, defendant is entitled to no special consideration on that score.

Unavailability because of death of one who had made a statement sought to be used at a later trial has received considerable attention from legal scholars. See McCormick, Law of Evidence, Secs. 303, 304 (1954); V Wigmore on Evidence (3rd Ed.1940), Sec. 1576, page 435; 2 Jones on Evidence (6th Ed., Gard, 1972), Sec. 9:21. In 31A C.J.S. Evidence § 205, page 573 (1964), the rule is stated this way:

"With some exceptions, as where a statute provides otherwise, the general rule is that testimony as to the declarations of a person since deceased is inadmissible as hearsay."

See also 29 Am.Jur.2d, Evidence, Sec. 674, page 728 (1967).

All these authorities agree the hearsay rule should be relaxed to provide still another exception which would allow such statements to be considered when the circumstances attending them afforded suitable guarantee of trustworthiness. As an example of courts which have adopted this view see Hew v. Aruda, 462 P.2d 476, 479, 480 (Hawaii 1969).

A number of states—among them Massachusetts, California, and Connecticut—have statutes softening the harshness of the rule in varying degrees.

The proposed Rules of Evidence for United States Courts and Magistrates provide that a statement made by one who is unavailable as a witness by reason of death (or other specified causes) is not hearsay if it was made "not in response to the instigation of a person engaged in investigating, litigating, or settling a claim, which narrates, describes, or explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated litigation in which he was interested, and while his recollection was clear." See Rule 804(b)(2), proposed Federal Rules of Evidence and Advisory Committee's note set out at 4 Jones on Evidence (6th Ed., Gard, 1972) at page 594 under Exception (2).

Even this liberalized rule would not admit the statement now under consideration for here it *was* in response to the instigation of a person engaged in investigating and litigating a claim—in this case, a criminal charge.

We are not persuaded to depart from the general rule, and we hold the ruling of the trial court was right.

Defendant also argues the statement was admissible under the business records rule. See section 622.28, The Code. There is no merit to this argument. This rule requires the information to be supplied in the regular course of the *declarant's* business. It was indeed recorded by the court reporter in the regular course of *his* business but this furnishes no testimonial guarantee of the veracity of what the declarant (Landers) said. Although there is some authority to the contrary, this is the generally accepted rule. Johnson v. Lutz, (N.Y. App.1930) 253 N.Y. 124, 170 N.E. 517, 518; Standard Oil Co. of California v. Moore, (9 Cir. 1957), 251 F.2d 188, 214; C. Laughlin, Business Entries and the Like, 46 I.L.R. 276, 286, 296 (1961); 4 Jones on Evidence, supra, Advisory Committee's

Note, page 575; cf. In re Delaney, 185 N.
W.2d 726, 730 (Iowa 1971).

III. For the reason set out in Division
I, the judgment is reversed and the case is
remanded for a new trial.

Reversed and remanded.