STATE of Iowa, Appellee,

v.

Mark AHERN, Appellant.

No. 57512.

Supreme Court of Iowa.

March 19, 1975.

Kennedy & Kennedy, New Hampton, for appellant.

Richard C. Turner, Atty. Gen., Gary A. Ahrens, Asst. Atty. Gen., and Richard P. TeKippe, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Defendant Mark Ahern appeals from judgment entered on his conviction for possession of a schedule II controlled substance. We reverse and remand.

On January 8, 1974, Frank Holshlag and William Wegman, both attorneys, and police officer James Burton drove to a house at 209 South Water Street in New Hamp-

ton, Iowa, in search of Holshlag's juvenile client Tammy Tylee. Holshlag had requested Wegman and officer Burton to help locate Tammy after her mother had told him Tammy had been missing for several days and might be at that address. While traveling in the police car to the house Burton told the attorneys they would probably find drugs in searching for Tammy.

Arriving at the address, Burton parked the car in the driveway and the three entered a vestibule in the building which served two apartments. Attempting to determine which apartment Tammy might be in, Burton spoke with the occupant of one and decided on the other after hearing loud rock music emanating from it. During this time Burton smelled the distinctive odor of burning marijuana.

Burton knocked on the apartment door three times, pausing from five to fifteen seconds between knocks, and, upon hearing movement inside, kicked in the door and entered the apartment. John Fenske was standing inside the door shaking his hand which had apparently been struck by the door.

Burton observed a roach, roach clip and roach pipe and placed Fenske under arrest. Burton read Fenske his *"Miranda* rights," told him he was going to "search the place" and find all the narcotics there and Fenske could save everybody a lot of trouble by producing the drugs. Fenske went into the kitchen and returned with a cannister containing various narcotics and related paraphernalia. During this time Tammy was found washing her hair in the bathroom.

The charge against defendant, relating to the cannister's contents, was based upon his co-occupancy of the apartment with Fenske and two others. His own testimony revealed he was aware of the presence of amphetamines in the cannister in his apartment.

Although defendant assigns three errors on this appeal we find the first dispositive.

I. By pre-trial motion to suppress and course-of-trial objections defendant unsuc-

cessfully asserted the contents of the cannister were inadmissible as products of an illegal search and seizure. The admission of those contents into evidence is assigned as error. In reviewing this contention we make our own evaluation of the validity of the search by examining all the circumstances shown in evidence. State v. Smith, 217 N.W.2d 633 (Iowa 1974).

The State admits no search warrant was issued. While the fourth amendment prohibits only unreasonable searches and seizures, warrantless searches and seizures are *per se* unreasonable unless they come within a few "jealously and carefully drawn" exceptions. The burden is upon those seeking to apply the exceptions to prove their applicability. Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); State v. Shea, 218 N.W.2d 610, 613 (Iowa 1974); State v. Osborn, 200 N.W.2d 798, 802 (Iowa 1972); State v. King, 191 N.W.2d 650, 654 (Iowa 1971), cert. denied 406 U.S. 908, 92 S.Ct. 1617, 31 L.Ed.2d 819 (1972).

The State argues the evidence in this case was admissible under either the "consent" or the "exigent circumstances" exception and properly concedes other exceptions (*e. g.*, "plain view," "incident to valid arrest") are inapplicable.

■ II. *Consent.* It is clear an otherwise impermissible search and seizure is valid if freely and voluntarily consented to, and such consent may, under certain circumstances, be given by a person other than the accused. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Defendant does not dispute Fenske, as a rent-paying co-occupant of the apartment, could validly consent to a search of the communal area (kitchen) from which the cannister was taken. See United States v. Matlock, supra, 415 U.S. at 171–172, 94 S.Ct. at 993, 39 L.Ed.2d at 249–250.

■ A prosecutor seeking to rely upon consent to validate an otherwise unlawful

search must prove the consent was freely and voluntarily given (Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 [1968]) and such proof must be clear and convincing. State v. Smith, supra at 634; State v. Baych, 169 N.W.2d 578, 583 (Iowa 1969). Whether consent was freely and voluntarily given is a question of fact to be determined by the totality of circumstances. Schneckloth v. Bustamonte, supra, 412 U.S. at 227, 93 S.Ct. at 2047–2048, 36 L.Ed.2d at 862–863. Mere acquiescence to asserted authority is insufficient. Bumper v. North Carolina, supra, 391 U.S. at 548–549, 88 S.Ct. at 1792, 20 L.Ed.2d at 802.

■ While we have examined all of the circumstances surrounding Fenske's consent, we shall discuss only those factors we deem most significant.

Burton entered the apartment by knocking on the door three times (within a span of less than thirty seconds) and, without identifying himself, kicking in the door. The coercive impact of this action on Fenske, who was standing beside the door and was injured when it came crashing in, is undeniable. In this regard we are not concerned with the legality or illegality of the entry but rather with its impact on Fenske.

Within seconds after breaking down the door Fenske was placed under arrest for possession of marijuana observed in an ashtray. Of course, an individual under arrest may validly consent to a search. State v. Gates, 260 Iowa 772, 777, 150 N.W.2d 617, 620 (1967). However, the psychological impact of an arrest immediately preceding a consent to search may not be ignored. United States v. Mapp, 476 F.2d 67, 78 (2 Cir. 1973) quoting Gorman v. United States, 380 F.2d 158, 163 (1 Cir. 1967) (" [A]rrest carries its own aura of coercion [and] the burden on the government to show voluntary consent is 'particularly heavy.' "). In the case sub judice the possibility Fenske's consent constituted mere submission to asserted authority is enhanced by his immediately preceding arrest.

After Burton had broken down the door and arrested Fenske, he "suggested" Fenske consent to a search:

"I told him that I was going to search the place, that I was going to find all the narcotics that were there; that if he knew where they were at, he would save everybody a lot of trouble and to show me where they were at."

In Bumper v. North Carolina, supra, 391 U.S. at 550, 88 S.Ct. at 1792, 20 L.Ed.2d at 803 the United States Supreme Court held:

"When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion— albeit colorably lawful coercion. Where there is coercion there cannot be consent."

The State attempts to distinguish Bumper on the ground Burton did not represent he had a warrant or lawful authority to search. We find a representation of lawful authority implicit in Burton's statement even without the assertion he had a warrant.

" 'Orderly submission to law-enforcement officers who, in effect, represented to the defendant that they had the authority to enter and search the house, against his will if necessary, was not such consent as constituted an understanding, intentional and voluntary waiver by the defendant of his fundamental rights under the Fourth Amendment to the Constitution.' "

Bumper v. North Carolina, supra, 391 U.S. at 549, 88 S.Ct. at 1792, 20 L.Ed.2d at 802, n. 14; see Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921).

The State further argues such circumstances as Burton giving Fenske the "Miranda warning," the specificity of Fenske's disclosure of the presence of drugs, the lack

of physical restraint on Fenske and his denial of ownership of the contents of the cannister are indicia of voluntariness or lack of coercion. We need not discuss these contentions in detail as we find, particularly in light of the holding in *Bumper*, they do little to meet the State's burden to produce clear and convincing evidence of a free and voluntary consent. We hold Fenske's consent was not voluntary.

In a related argument, the State asserts Fenske's action of retrieving the cannister and handing it to Burton vitiates all fourth amendment protection because no search was made. Principal reliance is placed on Coolidge v. New Hampshire, supra, 403 U.S. at 486–490, 91 S.Ct. at 2048–2050, 29 L.Ed.2d at 594–596, in which the court held there was no search and seizure when a suspect's wife spontaneously offered to police evidence eventually found to be incriminating. But *Coolidge* does not, as the State argues, provide an arbitrary cut-off of constitutional rights dependent solely upon who performed the initial physical act of seizing the evidence. Rather, the *Coolidge* court examined the totality of the circumstances to determine if Mrs. Coolidge's actions were the result of coercive or unconstitutional police conduct. Coolidge v. New Hampshire, supra; see Schneckloth v. Bustamonte, supra, 412 U.S. at 245, 93 S.Ct. at 2057, 36 L.Ed.2d at 873 ("In Coolidge * * * we found nothing constitutionally impermissible in the admission of that evidence at trial since the wife had not been coerced."). In the instant case we find little to distinguish that test from our earlier analysis of the validity of Fenske's consent to search and note that subsequent supreme court decisions have considered *Coolidge* a third-party consent search case. United States v. Matlock, supra, 415 U.S. at 171–172, 94 S.Ct. at 993, 39 L.Ed.2d at 249; Schneckloth v. Bustamonte, supra, 412 U.S. at 245, 93 S.Ct. at 2057, 36 L.Ed.2d at 873.

III. *Exigent circumstances.* The State also asserts the warrantless search was reasonable because it came within the exigent circumstances exception. That exception requires a showing of probable cause and exigent circumstances by the State. Coolidge v. New Hampshire, supra; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

■ We need not discuss whether probable cause existed as we find the other necessary element—exigent circumstances—missing.

> "Exigent circumstances sufficient to justify a search and seizure without a warrant usually include danger of violence and injury to the officers or others; risk of the subject's escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed."

—State v. Jackson, 210 N.W.2d 537, 540 (Iowa 1973).

Neither inconvenience in obtaining a warrant nor knowledge of what evidence will be discovered excuse a warrantless search. There must be such exigent circumstances as to make it impracticable to obtain a warrant. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Jackson, supra at 539–541.

The State argues the exigent circumstance controlling this case arose from its strong interest in assuring the safety of the minor, Tammy Tylee. It is asserted that interest is clearly expressed in § 232.15(3), The Code, which allows a peace officer to take into immediate custody a runaway child or a child found in surroundings endangering its health or welfare. Of course, that section may not authorize deprivation of fourth amendment protections.

Conceding the strong State interest involved and the possibility under some circumstances that interest could be a contributing factor in the creation of exigent circumstances, it is clear from Burton's own testimony Tammy's welfare was not a significant factor in motivating the forced entry and subsequent search. When asked why he kicked in the door Burton responded "I felt it my own mind that whoever was moving inside there was going to destroy

whatever drugs were inside the apartment." Later, when asked for the main reason he broke in, he replied "To make sure the drugs weren't destroyed or the marijuana wasn't destroyed."

Thus we turn to the real reason for the warrantless search—the possibility of the destruction of drugs. The evidence shows until Burton knocked on the door neither he nor his companions had any reason to believe their presence was known by the occupants of the apartment. The apartment window shades were down and to their knowledge no one in the apartment or on the street observed them enter the house. The "loud music" coming from the apartment made it doubtful they were heard.

In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) a similar fact situation was considered. Narcotics agents, standing outside Johnson's hotel room, smelled burning opium. The agents knocked on the door, identified themselves and heard movement inside. After Johnson opened the door a warrantless search was conducted. In holding the evidence found must be suppressed the court stated:

> "There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in the circumstances, certainly are not enough to by-pass the constitutional requirement * * *.
>
> " * * * *
>
> "If the officers in this case were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of a case in which it should be required."

Johnson v. United States, supra, 333 U.S. at 14–15, 68 S.Ct. at 369, 92 L.Ed. at 440–441; see also McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

In the instant case, as in *Johnson*, there was no probability that, unless taken on the spot, the evidence would be concealed or destroyed since the officer's presence was unknown. Beyond that point the officer chose to forego the constitutional process by attempting to create an exigency by his own actions. The State may not profit thereby. United States v. Marshall, 488 F.2d 1169, 1190 (9 Cir. 1973).

The State has failed to prove exigent circumstances sufficient to justify invasion of this dwelling. See Coolidge v. New Hampshire, supra, 403 U.S. at 459–460, 91 S.Ct. at 2034, 29 L.Ed.2d at 579; Kuipers, Suspicious Objects, Probable Cause, and the Law of Search and Seizure, 21 Drake L.Rev. 252, 257–259 (1972).

Trial court erred in admitting into evidence contents of the cannister.

IV. Since we must reverse this case for reasons stated above, we need only consider one additional assigned error.

■ Defendant asserts trial court committed reversible error by overruling defendant's motion for a directed verdict at close of State's evidence. While we agree evidence had not been adduced at that time proving at least one element of the crime— evidence later supplied by defendant's own testimony—we have held error may not be predicated on denial of a motion for directed verdict at the close of State's case when there is additional evidence offered thereafter. State v. Hansen, 225 N.W.2d 343, 348 (Iowa 1975); State v. Valde, 225 N.W.2d 313, 317 (Iowa 1975).

This case is reversed and remanded.

Reversed and remanded.