Richard T. LATHAM, Plaintiff-Appellant,

v.

B. C. SULLIVAN, as Judge of the Iowa District Court for Cerro Gordo County, Defendant-Appellee.

No. 2–63201.

Court of Appeals of Iowa.

May 30, 1980.

Joseph R. Lapointe, of Warren L. De Vries Law Office, Mason City, for plaintiff-appellant.

Thomas J. Miller, Atty. Gen. of Iowa and Rolf Aronsen, Asst. Cerro Gordo County Atty., for defendant-appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

SNELL, Judge.

Plaintiff-criminal defendant challenges by way of certiorari pursuant to Iowa R.Crim.P. 11(2) the trial court's overruling of his motion in limine and motion to suppress. Plaintiff contends the warrantless search of his apartment was in violation of the fourth amendment of the United States Constitution as applied to the states through the fourteenth amendment and section eight of article one of the Iowa Constitution, and the evidence seized in the warrantless search should have been suppressed. Plaintiff also contends the magistrate's failure to issue a warrant pursuant to section 808.4, supplement to the Code 1977, was an additional ground for suppression of the evidence. We sustain the writ in part in that we conclude that the motion to suppress should have been granted and the motion in limine should have been granted in part, and we remand for further proceedings.

During the evening hours of September 28, 1978, the Black & White Cafe in Mason City was broken into through the front window. Items including bottles of liquor with the Iowa State liquor tax stamp characteristic of liquor bottles sold to taverns, cigarettes, packages of "Slim Jim" sausages, and an empty "Premium" saltine cracker box were missing from the cafe. The minutes of testimony attached to the county attorney's information charging plaintiff with burglary in the second degree in violation of section 713.3, supplement to the Code 1977, reveal that the investigating officer "will testify that there were some subjects that lived above the cafe who he believed to be suspects." The officer proceeded to the rear of the building and climbed an outside stairway that led to the only entrance to the apartment in which the "suspects" resided, apparently in furtherance of his investigation. From the landing outside the apartment door, the officer looked through the apartment window and observed plaintiff along with several bottles of liquor with the special Iowa State liquor tax stamp attached to the bottles. He also observed a "Premium" saltine cracker box containing several packages of cigarettes.

After making these observations, the officer returned to the cafe to obtain further instructions. He was instructed to return to the apartment to request permission to search the apartment. The officer so proceeded, and informed plaintiff that he was a suspect in the breaking and entering of the cafe. After plaintiff refused to consent to a search, the officer observed that the

lights were turned off in the apartment and that after the lights were turned backed on, the cracker box containing the cigarettes was no longer observable through the window. The minutes of testimony do not reveal that any liquor bottles had been removed from the location at which they were readily visible from the window.

The officer again returned to the cafe for further instructions. He informed a detective of his recent observations and the detective then contacted a magistrate for the purpose of obtaining a search warrant. The magistrate concluded that the situation fell under the "hot pursuit" exception to the warrant requirement, and instructed the officers to proceed with a search without a warrant. Plaintiff again refused entrance to the officers in the absence of a search warrant, and the officers informed plaintiff that a warrant was not required and forced their way into plaintiff's apartment. The officers found the "Premium" saltine cracker box containing cigarettes behind a locked closet door that they removed from its hinges. Several bottles of liquor were found, including some in the refrigerator. Packages of "Slim Jim" sausages were found inside stereo speakers. Plaintiff and a co-suspect were then taken into custody, booked, and incarcerated in the city jail.

■ Plaintiff moved to suppress all evidence taken as a consequence of the warrantless search of his apartment. Plaintiff also made a motion in limine to prevent any mention of that evidence at trial. The trial court overruled both motions on the grounds that the original observation of the officer through the window was permissible as a "plain view" observation and not a search, that the observation established probable cause to search, that the officers were in hot pursuit, and that there were

exigent circumstances to justify the search. Plaintiff petitioned for a writ of certiorari[1] alleging the trial court's rulings on his motion were erroneous and in violation of federal and state constitutional provisions and section 808.4, supplement to the Code 1977. Certiorari was granted on April 3, 1979.

■ Plaintiff contends the warrantless search of his apartment and seizure of evidence pursuant to that search constituted a violation of his constitutional rights. Consequently, our review is de novo, even though the case is here on certiorari. *Bettuo v. Pelton*, 260 N.W.2d 423, 425 (Iowa 1977).

Plaintiff's allegation of unconstitutionality is based on the fourth amendment to the United States Constitution. That amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article one, section eight, of the Iowa Constitution is substantially the same. The fourth amendment protections are enforceable against the states through the due process clause of the fourteenth amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961).

■ Initially, we note that the fourth amendment, as a basic guardian provision of individuals' right to privacy, has endured a long history of controversy through conflicting interpretations and applications, and that a review of the cases applying that constitutional provision reveals what has at best been termed "a mess." Countryman,

1. Plaintiff petitioned for certiorari pursuant to the provision in Iowa R.Crim.P. 11(2) that was in effect at that time. Iowa R.Crim.P. 11(2) has since been amended to allow only an application for discretionary review of such an interlocutory order. 1979 Session, 68th G.A., ch. 174. The effective date of that amendment was July 1, 1979. Consequently, since plain-

tiff's petition for certiorari was filed and ruled on prior to the effective date of the amendment eliminating certiorari as an allowable method of reviewing an interlocutory ruling in a criminal case, certiorari was properly used to obtain review of the trial court's rulings on plaintiff's motions in this case.

*Search and Seizure in a Shambles? Recasting Fourth Amendment Law in the Mold of Justice Douglas,* 64 Iowa L.Rev. 435, 459 (1979); Dworkin, *Fact Style Adjudication and the Fourth Amendment: The Limits of Lawyering,* 48 Ind.L.J. 329, 329 (1973); *see State v. King,* 191 N.W.2d 650, 654 (Iowa 1971). Nevertheless, the basic principle of the fourth amendment that has been consistently sustained is that a warrantless search and seizure is per se unreasonable unless it comes within any of the recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564, 588 (1971); *State v. Schrier,* 283 N.W.2d 338, 342 (Iowa 1979); *State v. Folkens,* 281 N.W.2d 1, 3 (Iowa 1979); *Bettuo,* 260 N.W.2d at 425; *King,* 191 N.W.2d at 654. The carefully delineated exceptions are: searches consented to; searches incident to arrest; and searches required by exigent circumstances, including those that qualify under the plain view doctrine. *Shrier,* 283 N.W.2d at 342. Those seeking to justify a search under one of the exceptions have the burden to show the need for it, *Arkansas v. Sanders,* 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235, 242 (1979) (quoting *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951); *State v. Shea,* 218 N.W.2d 610, 613 (Iowa 1974), and must satisfy that burden by a preponderance of the evidence. *Bettuo,* 260 N.W.2d at 425.

■ The State concedes that if the initial observation through the apartment window was a fourth amendment violation, then the whole procedure following that observation is also invalid since the initial observation provided the only probable cause on which any subsequent search and seizure could be based. We conclude that the officer's initial observation through plaintiff's apartment window did not amount to a search within the meaning of the fourth amendment. This conclusion hinges on whether the officer had a legitimate right to be where he was when he made the observation. *See Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583; 1 W. LaFave, *Search & Seizure* § 2.3, at 304 (1978) (quot-

ing *State v. Crea,* 305 Minn. 342, 346, 233 N.W.2d 736, 739 (1975)).

The officer's purpose in carrying out the investigation of the recently committed crime was legitimate. Equally legitimate was his procedure in carrying out this purpose, by inspecting the immediately surrounding area, searching for witnesses, evidence, or any other clues he might fortuitously discover. Engaged in this process, he found himself on the landing of a stairway in back of the building in which the Black & White Cafe was located. That apparently provided the only outside entrance to the apartment. The officer's legitimate investigative purpose clearly provided him with a right to be where he was when he made the observation through plaintiff's apartment window. *See Taylor v. United States,* 286 U.S. 1, 5–6, 52 S.Ct. 466, 467, 76 L.Ed. 951, 953 (1932); *United States v. Hersh,* 464 F.2d 228, 230 (9th Cir. 1972) (quoting *Davis v. United States,* 327 F.2d 301, 303 (9th Cir. 1964)); *Lorenzana v. Superior Court,* 9 Cal.3d 626, 629, 511 P.2d 33, 35, 108 Cal.Rptr. 585, 587 (1973); *State v. Hook,* 60 Haw. 197, 200, 587 P.2d 1224, 1227 (1978); *State v. Crea,* 305 Minn. 342, 346, 233 N.W.2d 736, 739 (1975); *State v. Lane,* Mont., 573 P.2d 198, 201 (1977); 1 W. LaFave, *Search & Seizure* § 2.3 (1978). Any observations made from that spot where the officer had a legitimate right to be did not constitute a search within the meaning of the fourth amendment since there could be no contention of any reasonable expectation of privacy with regard to those observations. *Lorenzana,* 9 Cal.3d at 629, 511 P.2d at 35, 108 Cal.Rptr. at 587; *Crea,* 305 Minn. at 346–47, 233 N.W.2d at 739–40; 1 W. LaFave, *Search & Seizure* § 2.3, at 304–05 (1978). Consequently, the officer's observations through plaintiff's apartment window did not constitute a fourth amendment violation, and the content of those observations may not be required to be excluded from trial testimony on that constitutional ground.

The observation of the liquor bottles and cigarettes that one could reasonably conclude, under the circumstances, were items

taken from the cafe, would almost certainly provide probable cause sufficient to justify issuing a search warrant for a search of the apartment. However, in the case at bar, we are confronted with a situation in which the police entered plaintiff's dwelling for the purpose of searching and seizing evidence without a warrant. Whether this procedure was justified, or whether a warrant was required to allow the search is the question we next address.

 It is axiomatic that the sanctity of private dwellings is afforded the highest fourth amendment protections. *Payton v. New York,* 445 U.S. 573, 586–591, 100 S.Ct. 1371, 1380–82, 63 L.Ed.2d 639 (1980); *United States v. Martinez-Fuerte,* 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed. 2d 1116, 1130 (1976); *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972); *Dorman v. United States,* 435 F.2d 385, 389 (D.C. Cir. 1970); *United States v. Davis,* 423 F.2d 974, 977 (5th Cir. 1970). The establishment of probable cause to search the apartment by virtue of the legitimate observation of the police officer, is not. by itself, sufficient to justify a warrantless entry into a dwelling place to search for and seize evidence.

> Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Coolidge,* 403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed.2d at 584. Neither does the observation, by itself, establish the "plain view" exception to the warrant requirement sufficient to justify a warrantless entry:

> Seeing something in open view does not, of course, dispose, ipso facto, of the problem of crossing constitutionally protected thresholds. Those who thoughtlessly over-apply the plain view doctrine to every situation where there is a visual open view have not yet learned the simple

lesson long since mastered by old hands of the burlesque houses, "You can't touch everything you can see."
Light waves cross thresholds with a constitutional impunity not permitted arms and legs. Wherever the eye may go, the body of the policeman may not necessarily follow.

Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle,* 26 Mercer L.Rev. 1047, 1096 (1975). The "plain view" exception requires something substantially more than just the plain view. "[P]lain view *alone* is never enough to justify the warrantless seizure of evidence. . . . [N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances'". *Coolidge,* 403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed.2d at 584, *quoted in State v. Davis,* 228 N.W.2d 67, 72 (Iowa 1975). Thus, we must examine the factual situation before us to determine whether there were exigent circumstances of any type that would justify the warrantless entry to search and seize.

 In *State v. Jackson,* 210 N.W.2d 537 (Iowa 1973), the Iowa Supreme Court described exigent circumstances in this way: "Exigent circumstances sufficient to justify a search and seizure without a warrant usually include danger of violence and injury to the officers or others; risk of the subject's escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed." *Id.* at 540. The State attempts to base its contention of the existence of exigent circumstances on the ground that the evidence observed was readily destructible. We cannot agree. We do not base our conclusion on the awareness of hindsight that some of the evidence was in fact hidden and not destroyed after the police went through procedures during which time a warrant could have been obtained. Rather, we conclude that this was not the type of evidence that could have been readily destroyed in the time it would have taken to get a warrant. The evidence observed included glass bottles containing liquor and approximately two

dozen packages of cigarettes. This is not the type of evidence that is especially vulnerable to destruction so as to create exigent circumstances when discovered, such as narcotics. *See United States v. Johnson*, 561 F.2d 832, 844 (D.C. Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1080 (1977). We cannot conclude that the evidence observed was of such a destructible nature, that it would have been impracticable to obtain a warrant. *See State v. Ahern*, 227 N.W.2d 164, 167 (Iowa 1975).

◼ Arguably, exigent circumstances were created when the officer first related his desire to search plaintiff's apartment to plaintiff. Following that communication to plaintiff, the officer observed that the lights were turned off in the apartment, and when they were turned back on, the cracker box containing the cigarettes was no longer where it was when initially observed through the window. Thus, the contention may be made that the concealment of evidence following plaintiff's awareness that the police were on his trail constituted exigent circumstances sufficient to justify an immediate warrantless search and seizure. However, the creation of that exigency was the officer's announcement to plaintiff that he wished to search his apartment in light of his suspicions that plaintiff was involved in the recent cafe break-in. Plaintiff exercised his right to refuse consent to such a search in the absence of a search warrant. Thus, if we were to allow the search and seizure on the ground that the officer's declaration to plaintiff of his desire to search along with plaintiff's refusal to consent to such a search would create exigent circumstances sufficient to justify such a search and seizure, there is the danger of effectively eroding the right to refuse consent to searches by officers without a warrant. Therefore, we conclude that the appropriate rule to be applied in such a situation is that the State may not profit by an officer's choice to forego the constitutional process by attempting to create an exigency by his own actions. *Ahern*, 227 N.W.2d at 168.

Consequently, we cannot conclude that there were sufficient exigent circumstances to justify the warrantless search and seizure in the case at bar. The officer's valid initial observation merely established probable cause for a search warrant. There was ample opportunity to obtain such a warrant. *See Taylor v. United States*, 286 U.S. 1, 5–6, 52 S.Ct. 466, 467, 76 L.Ed. 951, 953 (1932); *State v. Lane*, Mont., 573 P.2d 198, 201 (1977). There was no reasonable fear of escape or destruction of evidence during the time necessary to obtain a warrant that the posting of officers outside the door could not have guarded against. *See McDonald v. United States*, 335 U.S. 451, 455, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948); *State v. Hook*, 60 Haw. 197, 203, 587 P.2d 1224, 1229 (1978); *State v. Jackson*, 210 N.W.2d 537, 541 (Iowa 1973).

◼ Neither was this a "hot pursuit" situation, as stated by the magistrate when approached for a search warrant and by the trial court in ruling on plaintiff's motions. "Hot pursuit" describes the situation when the police are pursuing a suspect who is in the process of fleeing from a recently committed crime. *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782, 787 (1967). In such a situation, a search of the suspect's home without a warrant is justified on the ground that speed in seizing an armed suspect and his or her weapons is essential in the protection of police officer's lives or the lives of others. *Id.* Such a necessity was clearly nonexistent in the case at bar, in which there was no suspicion that the suspect was armed, there was no witness who observed the suspect enter the apartment in question directly after committing the crime, and there was no need to search the apartment for the suspect since he was readily observable through the window. Consequently, we conclude that this situation did not qualify as a "hot pursuit" exception to the warrant requirement.

◼ The search and seizure in this case could also not qualify for the "incident to arrest" exception to the warrant requirement. We recognize that if this was an

arrest situation, the police would have been allowed to search the arrestee's person as well as the area within the arrestee's immediate control into which the arrestee might reach to grab a weapon or destructible evidence. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969); *State v. King,* 191 N.W.2d 650, 654 (Iowa 1971). Likewise, evidence in plain view of the officers while effecting the arrest could also be seized under the plain view doctrine since in making the arrest, the officers were in a place where they had a lawful right to be by virtue of the arrest. *See King,* 191 N.W.2d at 655.

However, under the factual situation in the case at bar, we cannot conclude that any of the evidence seized was properly seized pursuant to a search incident to an arrest. First of all, the record does not reveal where the suspects were when they were arrested. Consequently, there is no way of knowing what evidence, if any, was within their immediate control or within plain view of the officers at the time the arrest was made. Furthermore, the facts do not support the utilization of the search incident to arrest theory. A review of the record indicates that the true purpose of the officers in entering the apartment was to search rather than to arrest. If the officers wished to arrest plaintiff, they arguably could have done so immediately after the initial observation through the apartment window, since the observation of plaintiff with objects that the officer had reasonable cause to believe were stolen from the cafe clearly provided probable cause for plaintiff's arrest.[2] However, the police chose to delay such an arrest by seeking to search plaintiff's apartment, first, under authority of obtaining plaintiff's consent to a search, and failing that, by attempting to obtain a search warrant. Once they actually entered plaintiff's apartment, they did not immediately arrest plaintiff, but instituted a complete search of the apartment, removing a locked closet door and taking speakers apart in an effort to discover and seize evidence. It was only after the search and seizure process culminated that plaintiff was taken into custody. Thus, this was more appropriately an arrest incident to a search rather than a search incident to arrest. Under these circumstances, we cannot conclude that the warrantless search and seizure can be justified by the search incident to arrest exception. *See Jones v. United States,* 357 U.S. 493, 497, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514, 1518 (1958); *Trupiano v. United States,* 334 U.S. 699, 707–08, 68 S.Ct. 1229, 1233–34, 92 L.Ed. 1663, 1670 (1948), *overruled, United States v. Rabinowitz,* 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653, 660 (1950), *overruled, Chimel v. California,* 395 U.S. 752, 768, 89 S.Ct. 2034, 2042–43, 23 L.Ed.2d 685, 696–97 (1969); *State v. Davis,* 228 N.W.2d 67, 72–73 (Iowa 1975).

Since we conclude that there was no justifiable exception to the warrant requirement, the warrantless search and seizure was necessarily unreasonable and in violation of the fourth amendment. *Schrier,* 283 N.W.2d at 342. As a consequence, all evidence seized pursuant to the warrantless search is inadmissible in court. *State v. Smith,* 178 N.W.2d 329, 332 (Iowa 1970).

2. We note that under the recent Supreme Court case of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), there must be exigent circumstances in addition to probable cause to justify an arrest in a private dwelling without a warrant. *Id.* at 590, 100 S.Ct. at 1382. The Supreme Court expressly declined to consider what circumstances would be sufficiently exigent to justify a warrantless arrest in the home. *Id.* at 583, 100 S.Ct. at 1378. The Iowa Supreme Court has delineated six factors to be considered in making such a determination: (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is probable cause to believe the suspect committed the crime; (4) whether there is strong reason to believe the suspect is on the premises; (5) whether there is a strong likelihood that the suspect will escape if not immediately apprehended; and (6) whether the entry, though not consented to, is peaceable. *State v. Jones,* 274 N.W.2d 273, 275–76 (Iowa 1979) (citing *Dorman v. United States,* 435 F.2d 385, 392–93 (D.C. Cir. 1970)). Since our ultimate conclusion on the search-incident-to-arrest theory as applied to the case at bar is the same whether or not there were such exigent circumstances to justify a warrantless arrest, we need not address that issue.

The State contends that such an application of the exclusionary rule would be inappropriate in light of the rationale that the exclusionary rule is intended to deter police conduct that is in violation of the fourth amendment. The State argues that since the police attempted to comply with the fourth amendment by seeking to obtain a search warrant from a magistrate they should not be penalized by the exclusion of the evidence because the magistrate did not issue a search warrant but gave his permission to conduct what we have decided to be an impermissible warrantless search. We do not think such distinctions can be made among fourth amendment violations for purposes of the application of the exclusionary rule. Prior cases have held evidence inadmissible when obtained through a fourth amendment violation although the culpability for the violation was in the actions of the magistrate rather than the police. *E. g., Giordenello v. United States*, 357 U.S. 480, 485–88, 78 S.Ct. 1245, 1249–51, 2 L.Ed.2d 1503, 1509–11 (1958); *State v. Swartz*, 244 N.W.2d 553, 555 (Iowa 1976); *State v. Rockhold*, 243 N.W.2d 846, 849–50 (Iowa 1976); *State v. Boer*, 224 N.W.2d 217, 219–21 (Iowa 1974). Just as the magistrate may not become a "rubber stamp" for the police in issuing warrants, *State v. Sheridan*, 247 N.W.2d 232, 233 (Iowa 1976), *cert. denied*, 431 U.S. 929, 97 S.Ct. 2631, 53 L.Ed.2d 244 (1977), it would seem to be equally impermissible for magistrates to allow police to search and seize without a warrant when one was required and when there was no showing of impracticability in its issuance. The opposite conclusion would lead to the danger of magistrates becoming police surrogates for subversion of the warrant requirement.

Were we to hold otherwise, the warrant requirement would be relegated to a mere formality. However, the purpose of search warrants is far more significant.

A search warrant must describe with particularity the place to be searched and things to be seized. Without such a warrant, however, officers are free to determine for themselves the extent of their search and the precise objects to be seized. This is no small difference. It is a difference upon which depends much of the potency of the right of privacy. *Trupiano*, 334 U.S. at 710, 68 S.Ct. at 1235, 92 L.Ed. at 1672. In light of the purposes underlying the need to obtain search warrants, and the purpose of the warrant itself, we cannot conclude that any lesser purpose is served by excluding evidence obtained through a fourth amendment violation by a magistrate than that served by excluding evidence obtained through a fourth amendment violation by the police.

In addition, the language of section 808.4, supplement to the Code 1977, which states in pertinent part, that "[u]pon a finding of probable cause for grounds to issue a search warrant, the magistrate *shall* issue a warrant . . . ." (emphasis added), indicates that the issuance of a warrant is mandatory in a situation such as that in the case at bar. While we do not base our decision in this case on the mandatory language of section 808.4, we think such language buttresses our conclusion that warrants are required in situations such as that presented in the case at bar, and that the duty to issue warrants when proper is a fundamental requirement of the fourth amendment such that the exclusionary rule is triggered when that duty is impermissibly breached.

We conclude that the evidence seized by the officers during their warrantless search must be excluded as obtained through a fourth amendment violation. Therefore, plaintiff's motion to suppress the evidence should have been granted, and the trial court's overruling of that motion constituted a reversible constitutional violation. Plaintiff's motion in limine should also have been granted for the same reason to the extent that it would exclude comments and testimony at trial with regard to any evidence discovered or seized during the warrantless search. However, since we concluded that the officer's initial observation through plaintiff's apartment window did not constitute a search, we do not conclude that any comments regarding what was seen at that time must be excluded. Conse-

quently, the motion in limine is granted with regard to comments about evidence discovered or seized during the warrantless search, but remains properly overruled with regard to the officer's initial observation through the apartment window. We remand for further proceedings consistent with this opinion.

WRIT SUSTAINED IN PART; REMANDED.

DONIELSON, J., concurs specially.

DONIELSON, Judge (specially concurring).

While I concur in the result the majority reaches, I also wish to express my view on a question not addressed in the majority opinion. The majority states that if the police officer had wished to arrest plaintiff, arguably he could have done so after the initial observation through the apartment window. I agree since the officer's reasonable cause to believe the objects he observed inside plaintiff's apartment were stolen from the cafe provided probable cause to arrest plaintiff. Once, however, the police chose to delay such an arrest due to their attempts to obtain either plaintiff's permission or a search warrant, the exigent circumstances required to make a warrantless arrest were destroyed.

The majority did not address the issue of whether exigent circumstances existed to justify a warrantless arrest. Under the guidelines for finding exigency set out in *State v. Jones*, 274 N.W.2d 273, 275–76 (Iowa 1979) (citing *Dorman v. United States*, 435 F.2d 385, 392–93 (D.C. Cir. 1970)), I believe exigent circumstances existed at the time of the initial police observation through plaintiff's apartment window. The police had probable cause to believe plaintiff committed the breaking and entering into the cafe. The police also had strong reason to believe he was in the apartment. Although the majority finds the evidence involved here was not of the type easily destroyed, I would find differently.

The observed evidence included glass liquor bottles bearing Iowa State liquor tax stamps and approximately two dozen packages of cigarettes. These items of evidence, while not as readily destructible as narcotics, were susceptible to destruction if the plaintiff had had sufficient time. The cigarettes could have been flushed down the toilet; and, the liquor tax stamps could have been scratched off or destroyed beyond recognition.

Under these facts, exigent circumstances existed that would have permitted a warrantless arrest immediately after the initial observation by the police, and a subsequent search incident to that arrest. *Id.; see State v. Johnson*, 232 N.W.2d 477, 479–80 (Iowa 1975). The exigent circumstances were, however, destroyed by the police officer's delay and subsequent actions.