No. 13759

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

LESTER BROWNLOW LANE, JR.,

Defendant and Appellant.

Appeal from: District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Hooks and Sherlock, Townsend, Montana
Jeffrey Sherlock argued, Townsend, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Thomas Budewitz, County Attorney, Townsend, Montana
Robert J. Yunck argued, Cut Bank, Montana

Submitted: December 5, 1977

Decided: DEC 30 1977

Filed: DEC 30 1977

_____ Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court:

The State of Montana appeals from an order of the District Court, Broadwater County, suppressing evidence. The evidence was seized without a warrant, from defendant's mobile home on July 2, 1976, the evening of his arrest. Defendant was subsequently charged by an Information filed July 16, 1976 with criminal sale of dangerous drugs, a felony, in violation of section 54-132, R.C.M. 1947.

During the early evening hours of July 2, 1976, Broadwater County Undersheriff Michael Walrod proceeded to a mobile home located at 500 N. Walnut, Townsend, Montana. Officer Walrod, who had sold the mobile home in question to one Dick Ellis on January 1, 1976, was seeking to locate a pair of hip-wading boots he thought he may have left in the mobile home. It is clear from the record that the officer was on duty at the time, and was operating a county vehicle. However, there is no indication whether the officer was dressed in his sheriff's uniform.

Officer Walrod parked in front of the mobile home, proceeded up the sidewalk, and knocked at the door. As he was halfway up the walk, the officer could see, through an open window just to the right of the front door, someone lying on a sofa inside the home. In response to the knock, the individual, defendant Lane, got up off the sofa and came to the window. Defendant asked what the officer wanted. As the officer described the search for the missing boots, he stepped off the porch adjoining the front door and moved to the window. The officer glanced down and noticed two containers a distance of eighteen (18) inches away, placed on a TV tray just below window level. In the containers were six (6) one

to two inch plants. Believing them to be marijuana, the officer inquired of defendant if the plants were, in fact, marijuana. The defendant responded affirmatively.

Officer Walrod testified he then asked if he could come in and defendant opened the door. The officer went inside, arrested defendant, advised him of his constitutional rights, and seized the plants. Defendant stated, at the time of the arrest, that he was merely caring for the plants for Dick Ellis.

Upon being taken to and remaining in the Broadwater County jail for approximately one hour, defendant executed a written "Consent to Search" form. In the ensuing search, a quantity of seeds, later determined to be marijuana seeds, was located and seized. The plants were subsequently subjected to chemical tests to determine marijuana content. The test results indicated the plants were, in fact, marijuana.

Defendant's version of the seizure and his arrest differs in certain particulars from that of Officer Walrod, notably in suggesting a search of broader scope than that detailed above. In addition, defendant testified he was never informed he was under arrest, although he admits he was read his constitutional rights while at the mobile home.

Following the suppression hearing, the state sought to justify the seizure and subsequent admission in evidence of the plants under the "Plain View" exception to the Fourth Amendment warrant requirement, arguing that Officer Walrod had inadvertently observed obviously incriminating evidence while legitimately upon the premises of the defendant.

The District Court, by its findings of fact, conclusions of law, memorandum and order, dated January 28, 1977, determined there was no "search" within the purview of the

- 3 -

Fourth Amendment. However, the court also concluded that the warrantless seizure of the plants was unreasonable and, therefore, a violation of the Fourth Amendment.

In its memorandum, the District Court indicated its determination was based on the state's failure to satisfy two essential preconditions to the application of the "Plain View" doctrine: (1) The state failed to show the evidence was immediately apparent as such, (2) There was no showing of exigent circumstances rendering immediate seizure of the evidence imperative.

For the reasons specified herein, we affirm the order of the District Court suppressing the evidence.

The issues on appeal concern application of the component requirements of the "Plain View" doctrine to the facts at bar. We phrase the issues as follows: (1) Must "exigent circumstances" rendering imperative an immediate warrantless seizure of evidence be demonstrated where the evidence so seized is within the plain view of the officer? (2) Was the evidence "immediately apparent as such" to Officer Walrod in the instant case?

The state centrally argues there is no requirement under any pertinent decision interpreting the "Plain View" doctrine, that exigent circumstances be shown to justify a warrantless seizure of evidence.

Defendant takes the position, adopted below by the District Court, that a showing of exigent circumstances by the state is a foundational prerequisite to application of the "Plain View" doctrine.

The fundamental rule in the area of search and seizure law is set forth in the case of Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L Ed 2d 576, 585:

" * * * searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." 389 U.S. 357, 19 L Ed 2d 585.

It is clear that such exceptions are "jealously and carefully drawn." Jones v. United States (1957), 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L Ed 2d 1514.

The "Plain View" exception, as an independently recognized doctrine, was first articulated and given content by the case of Coolidge v. New Hampshire (1971), 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L Ed 2d 564, 583, and has found application in Montana. State v. Gallagher, (1973), 162 Mont. 155, 509 P.2d 852.

The conditions precedent to application of the "Plain View" exception are delineated in Coolidge as follows:

"What the plain view cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification -- whether it be a warrant for another object, hot pursuit, search incident to a lawful arrest or some other legitimate reason for being present unconnected with a search directed against the accused -- and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them * * *." 403 U.S. 466.

The "Plain View" doctrine is not without limits, however. Plain view of evidence, standing alone, is an insufficient justification for warrantless seizure thereof. Despite the observation of evidence in plain sight and the existence of probable cause, the police are not justified in making a warrantless seizure of the evidence absent a showing of exigent circumstances rendering immediate seizure imperative. Coolidge v. New Hampshire, supra.; State v. Schur (1975), 217 Kan. 741, 538 P.2d 689; Brown v. State of Maryland (1972), 15 Md. App. 584, 292 A.2d 762.

Here, we are presented with a seizure situation in which exigent circumstances were wholly absent. The state failed to demonstrate defendant was in any manner alerted to the officer's initial observation of the evidence prior to being questioned. There was no suggestion in the record of threatened flight or potential destruction of evidence. Given such a framework, the officer's valid visual observation merely furnished probable cause for issuance of a warrant.

One of the distinct constitutional objectives served by the warrant requirement is voiced by the majority opinion in Coolidge:

> " * * * First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. See, e.g. McDonald v. United States, 335 U.S. 451, Warden v. Hayden, 387 U.S. 294, Katz v. United States, 389 U.S. 347, Chimel v. California, 395 U.S. at 761-762." 403 U.S. 467.

Here, Officer Walrod had ample opportunity to procure a valid search warrant; he knew the description and location of the mobile home and the evidence to be seized therein. The seizure was therefore unreasonable and a violation of defendant's right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments. Accordingly, the District Court was correct in granting defendant's motion to suppress the evidence.

We question whether the plain view which occurred in this case is within the doctrine contemplated by Coolidge for yet another reason.

The first condition precedent and common denominator to any valid "Plain View" seizure is, under Coolidge, a justifiable prior intrusion. 403 U.S. 466. See also, Harris v. United States (1967), 390 U.S. 234, 88 S.Ct. 992, 19 L Ed 2d 1067; Ker v. California (1962), 374 U.S. 23, 83 S.Ct. 1623, 10 L Ed 2d 726. The doctrine therefore comprehends only post-intrusion observations. Brown v. Maryland, supra. The formal

"Plain View" doctrine does not extend to preintrusion observation of evidence within a "constitutionally protected area," such as defendant's mobile home, from a vantage point outside the "constitutionally protected area." Such distinction is recognized by the majority in Coolidge, wherein it is stated:

> " * * * Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that police may not enter and make a warrantless seizure. Taylor v. United States, 286 U.S. 1; Johnson v. United States, 333 U.S. 10; McDonald v. United States, 335 U.S. 451; Jones v. United States, 357 U.S. 493, 497-498; Chapman v. United States, 365 U.S. 610; Trupiano v. United States, 334 U.S. 699." 403 U.S. 468.

In this case, Officer Walrod, by his own testimony, first viewed the evidence located within defendant's mobile home while standing outside the window. A search warrant should have been obtained. This is not a case in which the officer had made an intrusion into a home, by invitation or other legitimate reason, prior to observation of the evidence in plain view. Cf. State v. Gallagher, supra.

It is well settled that this Court presumes the correctness of the lower court's order on appeal. It is the burden of appellant to overcome such a presumption. State ex rel. Stevens v. District Court (1976), ____Mont.____, 550 P.2d, 385, 388, 33 St.Rep. 469; State ex rel. Elakovich v. Zbitnoff (1963), 142 Mont. 576, 386 P.2d 343. Here, the state has failed to carry its burden.

Given our resolution of the cause on the first issue, we find no need to discuss the second issue heretofore noted.

The order of the District Court suppressing evidence is affirmed.

_____
Justice

- 7 -

We concur:

_____
           Chief Justice

_____


_____


_____
           Justices