No. 82-129

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

DANNY PAUL GODSEY,

Defendant and Appellant.

Appeal from:  District Court of the Sixteenth Judicial District,
In and for the County of Powder River
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellant:

Stephens and Cole, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert Brooks, County Attorney, Broadus, Montana

Submitted on briefs: October 7, 1982

Decided: December 29, 1982

Filed: DEC 29 1982

_____
                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant was convicted of one count of possession of dangerous drugs, a misdemeanor, and of one count of criminal sale of dangerous drugs, a felony, in a Powder River County trial held before the judge sitting without a jury. The District Court dismissed a third count charging possession of dangerous drugs, cocaine, for insufficient evidence. Defendant now appeals. We affirm.

On Saturday morning, March 14, 1981, the Powder River County sheriff's office received a complaint from Broadus resident Anne Amsden that a vehicle was speeding in her neighborhood. She was concerned for the safety of her grandchildren who were playing in the area. Someone had identified defendant as the owner of the car, the only 1972 orange and black two-door Chevy Nova in town. Deputy Dennis Frawley stopped at the Amsden residence later in the morning to get a description from Mrs. Amsden, and he asked her to sign a complaint. She did not want to sign a complaint for the issuance of a citation, but she did want something done. Deputy Frawley told her that he would "go over and talk to Dan and tell him to slow it down."

The deputy then went to the residence of defendant's grandparents, which was where defendant stayed when he was in Broadus, and he found the car in the driveway of the residence. Several people were around the garage. The front tires were on the concrete apron in front of the garage, and he noticed someone working under the car. Assuming it was defendant, Frawley reached down and shook the person's foot. It turned out to be a fifteen-year-old friend of defendant, Tim Eustice, who slid part way out from

-2-

under the car and told Frawley that defendant was in the house. As the deputy stood back up, he glanced through the open window of the car and saw a baggie of what appeared to be marijuana lying on the front seat. He seized the baggie, arrested defendant for possession of dangerous drugs, secured the scene, and called the dispatcher for back-up assistance.

Since it was a weekend, Frawley was the only deputy on duty. It took some time for another officer to arrive. Frawley then booked defendant, and the car was impounded. Defendant was later charged with the sale of a dangerous drug (marijuana) to a minor (Tim Eustice) and with possession of cocaine.

Two issues are presented on appeal:

(1) Whether the District Court erred in allowing the introduction of evidence seized as a result of the warrantless entry onto private premises by a law enforcement officer; and

(2) Whether sufficient evidence sustains the convictions.

Defendant challenges the seizure of the marijuana on the basis that it was a warrantless seizure on private property following what may have been a pretext entry on the premises. This argument fails.

This Court has carefully considered warrantless searches that fall within the "plain view" exception to the Fourteenth Amendment prohibition on such searches that was first enunciated by the United States Supreme Court in Coolidge v. New Hampshire (1971), 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583, and State v. Lane

(1977), 175 Mont. 225, 229, 573 P.2d 198, 201. In order for us to find that evidence obtained without a search warrant falls within the plain view doctrine, it must be demonstrated that: (1) the police officer had a prior justification for the intrusion; (2) that he then inadvertently came across the evidence incriminating the accused; and (3) that exigent circumstances existed that rendered immediate seizure imperative. State v. Lane, 175 Mont. at 229, 573 P.2d at 201.

Defendant argues that these conditions did not exist. He contends that Frawley did not have a legitimate reason to intrude upon the premises but rather used the speeding complaint as a pretext for investigating defendant, who was characterized by the officer as a suspected drug user. He also contends that no exigent circumstances existed that required immediate seizure of the baggie of marijuana. These contentions are without merit.

The record provides ample support for the officer's claim that he was investigating a traffic complaint. Cf. State v. Carlson (1982), ____ Mont. ____, 644 P.2d 498, 39 St.Rep. 802. There is also substantial evidence supporting his claim that he inadvertently came upon the baggie of marijuana. Both he and Tim Eustice testified to its ready visibility. Finally, the facts clearly demonstrate the existence of exigent circumstances. Several people were working or standing in the area near the garage. Deputy Frawley was the only officer on duty at the time he spotted the marijuana. It would take some time for a back-up officer to be called and to arrive. Since it was Saturday, it was likely that the justice of the peace might not be

-4-

available to sign a search warrant. And the Powder River County attorney, the officer who generally prepared all search warrants, was out of town for the weekend.

These circumstances are clearly distinguishable from the situation presented in State v. Lane, supra. In Lane, an officer spotted a marijuana plant from outside the window of a mobile home. There was no indication that anyone observed the officer as he made this discovery or that any threat was presented that the plants would be moved or destroyed in the time needed to procure a search warrant. The officer invaded the sanctity of someone's home, the chief evil against which the Fourth Amendment is directed. Payton v. New York (1980), 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639, 651.

Here, the officer did not violate any reasonable expectation of privacy that defendant may have had. State v. Hyem (1981), ___ Mont. ___, 630 P.2d 202, 38 St.Rep. 891. He walked onto premises that were open, where people came and went. No fences or gates barred the officer's entry. Indeed, the record indicates that while the bumper and headlights of the car were within the garage itself, part of the car was also parked upon a public right-of-way owned by the township. The deputy's intrusion was for the legitimate purpose of investigating a traffic complaint. His discovery was inadvertent and he faced a very real possibility that the evidence would disappear or be destroyed in the time it took to secure a warrant. He testified that he was startled and did a double-take on seeing the baggie sitting in plain view. There is a clear distinction between a warrantless seizure of property that rests in an open area or is seized

-5-

without an invasion of privacy and a seizure of property that is situated on private premises that are not otherwise open and accessible to the seizing officer. G.M. Leasing Corp. v. United States (1977), 429 U.S. 338, 354, 97 S.Ct. 619, 629-630, 50 L.Ed.2d 530, 545.

The United States Supreme Court has most recently examined the plain view doctrine in Washington v. Chrisman (1982), 452 U.S. 959, 102 S.Ct. 812, 70 L.Ed.2d 778. In Chrisman, a campus police officer observed Carl Overdahl, a student at the University of Washington, as he left a student dormitory with a half-gallon bottle of gin. He appeared to be underage and, thus, in violation of a Washington statute prohibiting possession of alcoholic beverages by anyone under the age of 21. The policeman stopped Overdahl and asked for identification. Overdahl did not have identification on him and asked if the officer would wait while he went and got it. The officer told Overdahl that under the circumstances he would have to accompany him. Overdahl replied "O.K." Once in the dorm room, the officer noticed seeds and a small pipe and noticed that Overdahl's roommate, Chrisman, was behaving very nervously. He examined the seeds and pipe and on the basis of his training confirmed that they were marijuana. Overdahl and his roommate, Chrisman, were then read their Miranda rights and agreed to a search of the room. The Court held:

> "The 'plain view' exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. Coolidge v. New Hampshire, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971); Harris v. United States, 390 U.S. 234, 19 L.Ed.2d 1067, 88 S.Ct. 992 (1968). Here,

> the officer had placed Overdahl under
> lawful arrest, and therefore was autho-
> rized to accompany him to his room for
> the purpose of obtaining identification.
> The officer had a right to remain liter-
> ally at Overdahl's elbow at all times;
> nothing in the Fourth Amendment is to the
> contrary." 102 S.Ct. at 816, 70 L.Ed.2d
> at 784-785. (Emphasis added.)

The United States Supreme Court then went on to reject the argument that the officer's entry into the room upon obser- vation of the seeds and pipe was not justified by exigent circumstances. 102 S.Ct. at 816, 70 L.Ed.2d at 785. The Court noted that the fundamental premise of the Fourth Amendment is that it protects only against unreasonable intrusion into an individual's privacy. 102 S.Ct. at 817- 818, 70 L.Ed.2d at 786.

Officer Frawley had a right to approach defendant's vehicle and the person working under it as he investigated the traffic complaint. His inadvertent discovery of the marijuana in plain view and the likelihood that his dis- covery was noticed, coupled with the minimal chance that it would still be present upon his return with a warrant, justified his seizure. See also, Harris v. United States (1968), 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069.

Defendant raises as a second issue the argument that there is not substantial evidence to support the verdict. He argues first that where two interpretations exist that may reasonably be placed upon a set of facts, this Court "is bound to adopt that interpretation which will admit of the Defendant's innocence." Second, that defendant was not in exclusive possession of the marijuana and therefore it may not be inferred that he knew of the presence of the drugs

and had control of them without statements or other circumstances to support the inference. Third, he argues that the State failed to introduce the contraband items into evidence and thus failed to establish the corpus delicti. Finally, he argues that the testimony of Tim Eustice is accomplice testimony and as such requires corroboration. We reject these contentions.

The appropriate standard of sufficiency of the evidence for this Court to apply was set forth by the United States Supreme Court in Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573, and was adopted by this Court in State v. Plouffe (1982), ____ Mont. ____, 646 P.2d 533, 39 St.Rep. 1064: ". . . the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 646 P.2d at 538, 39 St.Rep. at 1070. Using that standard, we find sufficient evidence to support the verdict.

While the contraband was not admitted at trial, prior to trial the court suggested and both parties agreed to stipulate that the evidence from the suppression hearing be deemed to have been submitted at trial. It was determined by the State Crime Lab that the baggie was full of marijuana. Testimony by Tim Eustice buttressed the inference that the marijuana found in defendant's vehicle belonged to defendant. Eustice stated that he noticed it, defendant observed his interest, and defendant told him he could "roll a joint" if he so desired. Eustice did so. Section 45-9-101(1), MCA, prohibiting sale of dangerous drugs, provides

-8-

that:

> "A person commits the offense of criminal sale of dangerous drugs if he sells, barters, exchanges, gives away or offers to sell, barter, exchange or give away or manufactures, prepares, cultivates, compounds, or processes any dangerous drug, as defined in 50-32-101." (Emphasis added.)

This Court has noted:

> "Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed where contraband is found in a place that is immediately and exclusively accessible to the accused and is subject to his dominion or control or to the joint dominion and control of the accused and another, [citation omitted]." (Emphasis added.) State v. Meader (1979), ____ Mont. ____, 601 P.2d 386, 392, 36 St.Rep. 1747, 1754.

Here, defendant exhibited control over the drug and offered it to another. The drug was in his vehicle. Eustice testified that the drug was not his and that he did not know to whom it belonged. However, he also testified that defendant exercised control over the marijuana by offering it to him. Substantial evidence supports the conviction.

We reject defendant's argument that Eustice was rendered an accomplice pursuant to section 45-2-301, MCA, when he was granted immunity from prosecution on a charge of possession of marijuana. Section 45-2-301, MCA, holds a person responsible for conduct of another "when he is legally accountable for such conduct as provided in 45-2-302 . . . ." Section 45-2-302, MCA, defines a person's legal accountability for another's conduct when:

> "(1) having a mental state described by the statute defining the offense, he causes another to perform the conduct, regardless of the legal capacity or mental state of the other person;

"(2) the statute defining the offense makes him so accountable; or

"(3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense." (Emphasis added.)

Defendant has failed to demonstrate that Eustice is legally accountable for defendant's possession of marijuana under any of the provisions of the statute.

Affirmed.

_____
                                Chief Justice

We concur:

_____

_____

_____

_____
        Justices

-10-