05-683

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 298

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RANDALL LEROY WOOD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2004-335
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Joslyn Hunt, Assistant Appellate
          Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Carol E. Schmidt,
          Assistant Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney, Karen Townsend,
          Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  April 18, 2007

Decided:  August 20, 2008

Filed:

_____
                          Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Randall Leroy Wood appeals his conviction in the District Court for the Fourth Judicial District, Missoula County, of Criminal Possession of Dangerous Drugs and Criminal Possession of Drug Paraphernalia. We affirm.

¶2      Wood raises two issues on appeal which we have restated as follows:

¶3      1. Whether Wood's counsel was ineffective for not moving for a mistrial after the arresting officer testified regarding Wood's behavior at the time of his arrest.

¶4      2. Whether the District Court erred in denying Wood's motion to dismiss for insufficient evidence.[1]

## Factual and Procedural Background

¶5      Shortly after 9:00 p.m. on the evening of April 11, 2004, Missoula Police Officer Katie Hall responded to a complaint at the parking lot of an apartment building in Missoula. While she was talking to one of the people at the scene, she observed a vehicle screech to a stop and then peel out. She later testified that this happened "about five times in a real short period." The person Officer Hall had been talking to indicated that this was the vehicle involved in the complaint.

---

[1]  At the close of the State's case-in-chief, Wood moved for a directed verdict arguing that insufficient evidence existed to submit the charge of criminal possession of dangerous drugs to the jury. However, we pointed out in *State v. McWilliams*, 2008 MT 59, ¶¶ 34-39, 341 Mont. 517, ¶¶ 34-39, 178 P.3d 121, ¶¶ 34-39, that there is no statutory authority for referring to a motion to dismiss for insufficient evidence as a motion for a directed verdict. Consequently, we will refer to Wood's motion throughout this Opinion as a motion to dismiss for insufficient evidence.

2

¶6     Officer Hall testified that Wood, the driver of the vehicle, pulled in behind her patrol car, immediately backed out again, and then shut off its headlights. Officer Hall returned to her patrol car and, as she was backing out of the parking lot, Wood pulled back into the parking lot where Officer Hall had just been. Officer Hall turned on her flashing lights which automatically activated the patrol car's video recorder. The video of the following events was played for the jury at Wood's trial.

¶7     The video showed and Officer Hall testified that rather than stopping when Officer Hall turned on her flashing lights, Wood sped through the parking lot and across an alley. He stopped in front of a house, exited the vehicle, and went inside. Officer Hall parked her patrol car behind Wood's vehicle and followed him into the house. The events that took place inside the house were out of sight of the video recorder.

¶8     Nevertheless, Officer Hall testified at trial that once inside the house, she located Wood in the doorway of a bedroom talking on the phone. Concerned that Wood might have a weapon, Officer Hall ordered Wood to show her his hands, but he did not comply. Instead, Wood went back into the bedroom and continued talking on the phone. With her gun pointed at Wood, Officer Hall repeatedly ordered Wood to show her his hands. Wood, still talking on the phone, finally came out of the bedroom. He had one hand on the phone and one hand behind his back. After repeated demands from Officer Hall to show her his hands, Wood eventually turned around in a circle so that Officer Hall could see both hands.

¶9     When Officer Hall was satisfied that Wood did not have a weapon, she ordered him to walk towards her. As he did so, Officer Hall holstered her gun. When Wood

3

reached her, she grabbed him by his arm and by his hair to exert control over him. Eventually Wood put the phone down and placed both of his hands behind his back so that Officer Hall could place him in handcuffs. Officer Hall then took Wood outside and attempted to walk him past his own car to her patrol car. However, a few steps from the house, Wood stopped and tried to turn around and go back into the house.

¶10 Wood was quite a bit taller than Officer Hall and, in an attempt to get some leverage over him, Officer Hall pushed Wood up against his car and delivered a forearm strike to his face to distract him enough so that she could get him to follow her commands. Officer Hall continued to try to walk Wood to her patrol car, but Wood continued to resist. At one point, Officer Hall attempted to execute a leg sweep to force Wood to the ground, but he stumbled away from her. When Officer Hall finally got Wood to her patrol car, she grabbed his hair again, bent him over the car, and waited for her backup to arrive. Officer Hall later testified that Wood did not react at all to either the forearm strike or her pulling on his hair.

¶11 After several other officers arrived on the scene to assist, Officer Hall searched Wood for weapons, emptied his pockets, and placed him in her patrol car. In Wood's front pocket Officer Hall found a glass vial with a black top and a white powdery residue inside. Officer Hall and some of the other officers performed a brief search of the residence, but did not find anything related to the vial seized from Wood's pocket. Officer Hall then transported Wood to the Missoula County Detention Center.

¶12 At the detention center, Sergeant Colyer, a drug recognition expert, attempted to evaluate Wood for being under the influence of drugs, but Wood was not cooperative.

4

Officer Hall testified that Wood was irrational and he was constantly moving. Consequently, he was not given a blood or breath test to determine whether he was under the influence of drugs or alcohol.

¶13 As the senior narcotics investigator for the City of Missoula, Sergeant Scott Brodie reviews all drug cases that are generated by the patrol officers. Sergeant Brodie is assigned to the detective division of the Missoula Police Department, specifically the high intensity drug trafficking area (HIDTA) task force. He reviewed Officer Hall's report a day or two after Wood was arrested. It was Sergeant Brodie that notified the evidence technician to submit the vial seized from Wood to the Montana State Crime Lab for testing.

¶14 Maureen Kocisko, a forensic scientist with the crime lab, tested the residue and concluded that it contained methamphetamine (meth). Kocisko testified at trial that she did not weigh the residue in the vial as the crime lab only reports to a hundredth of a gram and she did not feel there was enough to weigh.

¶15 Wood was charged by Information with Criminal Possession of Dangerous Drugs, a felony, in violation of § 45-9-102, MCA, and Criminal Possession of Drug Paraphernalia, a misdemeanor, in violation of § 45-10-103, MCA. Wood pled not guilty to both charges.

¶16 A jury trial was held on February 2 and 3, 2005, during which the State played the video of Wood's arrest. At the close of the State's case-in-chief, Wood's counsel moved to dismiss the charge of criminal possession of dangerous drugs. He argued that

insufficient evidence existed to prove that Wood knew the vial contained meth. The District Court denied the motion without comment.

¶17 Wood testified in his defense at trial claiming that he did not know the vial contained meth. He maintained that he found the vial a few hours before his arrest when he was clearing out an area by his garage and that he put the vial in his pocket because it was "neat looking" and resembled a device used to test water samples.

¶18 After listening to all of the evidence, the jury found Wood guilty of both offenses. The District Court sentenced Wood to five years at Montana State Prison on the drug possession charge and six months in the Missoula County jail on the possession of drug paraphernalia charge. The court ordered the sentences to run concurrently. The court also suspended both sentences upon Wood's compliance with various terms and conditions. Wood appealed.

**Standard of Review**

¶19 Claims of ineffective assistance of counsel contain mixed questions of law and fact for which our review is de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, ¶ 9, 183 P.3d 861, ¶ 9 (citing *State v. Racz*, 2007 MT 244, ¶ 13, 339 Mont. 218, ¶ 13, 168 P.3d 685, ¶ 13). The proper standard of review for the denial of a motion to dismiss for insufficient evidence is also de novo. *State v. McWilliams*, 2008 MT 59, ¶ 37, 341 Mont. 517, ¶ 37, 178 P.3d 121, ¶ 37 (citing *State v. Skinner*, 2007 MT 175, ¶ 14, 338 Mont. 197, ¶ 14, 163 P.3d 399, ¶ 14; *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19).

**Issue 1.**

¶20    *Whether Wood's counsel was ineffective for not moving for a mistrial after the arresting officer testified regarding Wood's behavior at the time of his arrest.*

¶21    Wood argues on appeal that his trial counsel was ineffective for not moving for a mistrial after Officer Hall testified in violation of the District Court's order that Wood was under the influence of drugs. Wood maintains that no evidence existed that he was in knowing control of meth—only that he had a vial in his pocket that later tested positive for meth. He asserts that, although trial counsel objected to the testimony, for the jury to hear that Wood was under the influence of drugs was prejudicial and counsel should have moved for a mistrial.

¶22    The Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee an individual the right to effective assistance of counsel. When assessing claims of ineffective assistance of counsel, we apply the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow*, ¶ 10. This test requires a defendant to " 'show that his counsel's performance was deficient and that the deficient performance prejudiced the defense and deprived the defendant of a fair trial.' " *State v. Weldele*, 2003 MT 117, ¶ 68, 315 Mont. 452, ¶ 68, 69 P.3d 1162, ¶ 68 (quoting *Porter v. State*, 2002 MT 319, ¶ 26, 313 Mont. 149, ¶ 26, 60 P.3d 951, ¶ 26).

¶23    Under the first prong of the *Strickland* analysis, a defendant must establish that "counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20. Moreover, as the Supreme Court pointed out in *Strickland*, reviewing courts

" 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and the defendant 'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Whitlow*, ¶ 21 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

¶24 When addressing the second prong of the test, a defendant must " 'establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.' " *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, ¶ 11, 97 P.3d 1095, ¶ 11 (quoting *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, ¶ 14, 70 P.3d 1234, ¶ 14).

¶25 Before trial began, Wood's counsel conducted a voir dire examination of Officer Hall and Sergeant Brodie to assess whether they were qualified to give an opinion at trial on drug use, particularly meth use. During this examination, Officer Hall testified that she had been with the Missoula Police Department for more than three years and that she encounters individuals under the influence of meth at least once a week. She also testified that, while at the police academy, she attended courses on how to recognize when an individual might be under the influence of drugs, specifically meth, and that, less than two years prior to this incident, she attended another course specifically in drug recognition. Along those lines, Officer Hall stated that her training and experience has taught her that individuals under the influence of meth generally exhibit the following characteristics and behaviors: they are fairly aggressive and irrational; they are fidgety and have a hard time standing still; and they have a very high tolerance for pain.

¶26 Sergeant Brodie testified that he had been with the Missoula Police Department for fourteen years and that for the past eight years, he had been assigned to work narcotics. Sergeant Brodie also testified that, in those eight years, he had attended numerous training sessions and seminars with a general focus on investigating drug crimes which included training on the symptomology of individuals on meth and other drugs. Sergeant Brodie stated that his training and experience has taught him that meth is a central nervous system stimulant that increases body functions, speeds up the metabolism, causes sleep deprivation, and causes aggressive behavior and paranoia.

¶27 Based on this examination, the District Court determined that Officer Hall and Sergeant Brodie could not testify that Wood was under the influence of meth, only that Wood exhibited behaviors indicative of someone under the influence of meth. Hence, the court cautioned them to limit their testimony accordingly.

¶28 Wood now contends on appeal that during trial, Officer Hall violated the District Court's order when, in response to the prosecutor's question regarding what particular characteristics indicative of meth use she had observed in Wood, Officer Hall replied:

> The other thing I forgot to mention was they're irrational. Frequently it's very difficult to deal with people under the influence. When he failed to yield to the stop I was making, I felt that that was a sign of some sort of impairment. He was making a poor decision that can be influenced by drugs. When he ran into the house, I felt that he may be hiding something.

¶29 Contrary to Wood's assertions, Officer Hall did not testify that Wood was under the influence of meth, thus she did not violate the District Court's order. Rather, Officer Hall testified that Wood was exhibiting behaviors similar to someone under the influence when she stated that his failure to stop was a sign of some sort of impairment and that

9

poor decisions of that nature can be influenced by drugs. Consequently, Officer Hall's testimony was well within the limits set by the court.

¶30 Furthermore, on cross-examination, Wood's counsel elicited the following testimony from Officer Hall:

> Q. Now, when you talk about these symptoms that a person can show, potentially be on methamphetamine, you're not saying Mr. Wood was on methamphetamine, are you?
> A. No, I'm not. I'm just stating indicators.
> Q. Okay. And you can't tell the jury today that he was under the influence, is that correct?
> A. Not for certain, no, I can't.

¶31 A mistrial is appropriate when a reasonable possibility exists that inadmissible evidence may have contributed to the defendant's conviction. *State v. Smith*, 2005 MT 18, ¶ 8, 325 Mont. 374, ¶ 8, 106 P.3d 553, ¶ 8 (citing *State v. Partin*, 287 Mont. 12, 18, 951 P.2d 1002, 1005 (1997)). A mistrial should be denied for technical errors or defects that do not affect the substantial rights of the defendant. *State v. White*, 2008 MT 129, ¶ 12, 343 Mont. 66, ¶ 12, 184 P.3d 1008, ¶ 12; § 46-20-701, MCA.

¶32 In this case, looking at the evidence as a whole, we agree with the State that Officer Hall made it clear to the jury that she did not know for certain that Wood was under the influence of meth at the time of his arrest. Thus, we conclude that Officer Hall did not violate the District Court's order. The testimony she gave was admissible, hence there was no need for Wood's counsel to move for a mistrial and, thus, no grounds for an ineffective assistance of counsel claim.

**Issue 2.**

¶33 *Whether the District Court erred in denying Wood's motion to dismiss for insufficient evidence.*

¶34 Wood argues on appeal that insufficient evidence existed to submit the charge of criminal possession of dangerous drugs to the jury. He maintains that neither Officer Hall nor Sergeant Brodie had evidence that Wood knew that the residue in the vial was meth, thus the court should have granted Wood's motion to dismiss for insufficient evidence.

¶35 Section 45-9-102, MCA, makes it a crime to possess any dangerous drug. And, while this statute distinguishes between amounts as to marijuana possession, no such distinction is made for possession of meth. Indeed, the statute does not require the State to prove possession of a measurable amount of meth. We cited this fact in *State v. Hull*, 158 Mont. 6, 18, 487 P.2d 1314, 1321 (1971), wherein we held that where "the proof establishes the existence of a prohibited dangerous drug, such proof will sustain a conviction without proof of the precise quantity thereof." To that end, the court instructed the jury in the instant case as follows:

> You are instructed that Montana law does not require proof of any specific quantity of a dangerous drug in order to constitute a violation of the offense of criminal possession of dangerous drugs.

¶36 The State contends on appeal that Wood has waived this issue because he failed to object to this jury instruction at trial. However, the transcript indicates otherwise. While Wood's counsel agreed to the jury instructions as proposed at the end of the first day of trial, this particular jury instruction was not submitted by the State until the start of the second day. Wood's counsel did object to the instruction at that time stating that

although he was not able to point the court to any relevant case law, he believed that this instruction was an inappropriate comment on the evidence. He also stated that he was concerned that it would diminish the State's burden to prove that Wood actually knew what was in the vial. The court overruled counsel's objection and the instruction was given to the jury.

¶37 As we noted previously in this Opinion, Wood's counsel moved to dismiss the charge of criminal possession of dangerous drugs at the close of the State's case-in-chief. He argued that insufficient evidence existed to prove that Wood knew the vial contained meth. Section 46-16-403, MCA, provides:

> **Evidence insufficient to go to jury.** When, at the close of the prosecution's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant.

Wood argues now on appeal that the District Court erred in denying his motion.

¶38 " ' Possession' is the *knowing* control of anything for a sufficient time to be able to terminate control." Section 45-2-101(59), MCA (emphasis added). "[A] mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense." *State v. Krum*, 238 Mont. 359, 361, 777 P.2d 889, 890 (1989) (citing § 45-2-103, MCA). Thus, while knowledge cannot be inferred from mere possession alone, it may be proven by evidence of acts, declarations or conduct of the defendant from which an inference of knowledge may be drawn. *Krum*, 238 Mont. at 362, 777 P.2d at 891 (citing *State v. Anderson*, 159 Mont. 344, 351, 498 P.2d 295, 299 (1972)).

¶39    As she did in the voir dire examination prior to trial, Officer Hall again testified at trial as to her training and experience in recognizing individuals under the influence of different types of drugs including meth.  She stated that typically, a person under the influence of meth will be fidgety with their hands, constantly moving, agitated, irrational and paranoid.  She also stated that they have a very high tolerance for pain so that things like a hair grab or a forearm strike would not be as effective on them as on a person not under the influence of meth.  When asked if Wood exhibited any of these behaviors, Officer Hall testified that he did not react when she grabbed his hair or when she struck him in the face, indicating to her that he had a high tolerance for pain.  In addition, she stated that when she was trying to walk Wood out to her patrol car, he was verbally agreeing that he would comply, yet he was physically resisting her, indicating to her that he was irrational.  She also stated that Wood was constantly moving both at the time of his arrest and at the detention center.

¶40    Sergeant Brodie also testified at trial as to his training and experience in recognizing individuals under the influence of different types of drugs including meth. He stated that in the eight years that he had been working in narcotics, he has spoken with or interviewed over a hundred suspects who have been meth users.  He also stated that in addition to attending the law enforcement academy, he had gone through DEA basic training and numerous other schools and seminars focused on drugs and that he is certified to assess and process clandestine meth labs.

¶41    Sergeant Brodie testified that his training and experience has taught him that meth is a central nervous system stimulant and that one of the alluring factors of meth is its

versatility—it can be injected, ingested, smoked or snorted. Sergeant Brodie testified that he had viewed the video of Wood's arrest and that Wood's behavior was consistent with that of someone on a central nervous system stimulant such as meth. He also stated that, in his experience, vials similar to the one seized from Wood commonly contain meth.

¶42 In his defense, Wood testified that he didn't pull over when Officer Hall activated her flashing lights because he wanted a witness to the stop and he was only half a block from home. However, as the State pointed out, there were several people in the parking lot when Officer Hall first activated her lights, any or all of whom would have been witnesses. Wood also testified that he thought the vial was part of a water filtration system and that he saw them use a vial like that to test water on "a Steven Segal show."

¶43 We have repeatedly held that "determinations of the credibility and weight of testimony are within the exclusive province of the jury, and conflicting testimony does not render the evidence insufficient to support a guilty verdict." *State v. McWilliams*, 2008 MT 59, ¶ 37, 341 Mont. 517, ¶ 37, 178 P.3d 121, ¶ 37 (citing *State v. Borsberry*, 2006 MT 126, ¶ 20, 332 Mont. 271, ¶ 20, 136 P.3d 993, ¶ 20; *State v. Shields*, 2005 MT 249, ¶ 19, 328 Mont. 509, ¶ 19, 122 P.3d 421, ¶ 19).

¶44 Based on the foregoing, we hold that there was sufficient evidence for the jury to conclude that Wood knowingly possessed meth. Therefore, we hold that the District Court did not err in denying Wood's motion to dismiss for insufficient evidence.

¶45 Affirmed.

/S/ JAMES C. NELSON

14

We Concur:

/S/ KARLA M. GRAY

/S/ JOHN WARNER

/S/ JIM RICE

/S/ PATRICIA COTTER