

DA 12-0518

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 332

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ANTHONY JAMES BURWELL,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DC-11-3445
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Jacob Q. Johnson, Assistant
          Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Jonathan M. Krauss,
          Assistant Attorney General, Helena, Montana

          Jed Fitch, Beaverhead County Attorney, Dillon, Montana

Submitted on Briefs:   October 16, 2013
Decided:   November 6, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Anthony James Burwell appeals from his conviction of the crime of criminal distribution of dangerous drugs in the Fifth Judicial District Court, Beaverhead County. We reverse.

¶2     The issue presented for review is whether the State presented sufficient evidence at trial to prove that Burwell committed the offense of criminal distribution of dangerous drugs.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     On August 31, 2011, while in police custody, Jennifer Jones wrote a list of "people to narc on." The list included a statement that about a month earlier, a man whose name she could not remember had given her marijuana in exchange for babysitting. She did not provide officers with the alleged marijuana, because she had already consumed it. She gave a somewhat vague physical description of the man. She said that he lived next door to a close friend of hers and described his residence. Officers concluded that Jones's statement referred to Burwell. They also discovered that Burwell had a medical marijuana card. Based on this information, on October 6, 2011, Burwell was charged with criminal distribution of dangerous drugs. Officers never searched Burwell's residence, never attempted a controlled buy, and never discovered any marijuana in his possession.

¶4     At trial, Jones testified that the night before she was to babysit, she and Burwell stood in the alley near his house and "smoked a bowl" of a substance she identified as

2

marijuana.  Burwell then gave her a small plastic baggie of a substance that was "green with orange hairs."  She testified that she knew the substance was marijuana because she had smoked marijuana before.  She smoked the substance that night and throughout the next day.  The officer to whom Jones had given her statement testified that Burwell had a medical marijuana card, which Burwell confirmed.  The State did not present any other evidence to identify the substance as marijuana.

¶5    At the close of evidence, defense counsel moved to dismiss on the grounds that the evidence presented was insufficient to support a verdict of guilty, pursuant to § 46-16-403, MCA.  The District Court denied the motion.  Burwell was convicted of criminal distribution of dangerous drugs and sentenced to the Department of Corrections for ten years, with five years suspended.

## STANDARD OF REVIEW

¶6    This Court reviews the question of whether sufficient evidence supports a conviction de novo.  *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, 160 P.3d 511. The evidence is considered in the light most favorable to the prosecution to determine whether " 'any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.' "  *State v. Torres*, 2013 MT 101, ¶ 16, 369 Mont. 516, 299 P.3d 804 (quoting *State v. Trujillo*, 2008 MT 101, ¶ 8, 342 Mont. 319, 180 P.3d 1153).

## DISCUSSION

¶7    Burwell argues that the State failed to prove the required elements of criminal distribution of dangerous drugs, § 45-9-101, MCA, because it did not produce sufficient

3

evidence that the substance given to Jones was marijuana, a dangerous drug. The State responds that although the substance was never tested, Jones's testimony and the fact that Burwell had a medical marijuana card were sufficient to prove that the substance was marijuana.

¶8 The failure to have a suspected drug substance tested by the state crime lab does not always render the evidence insufficient to support a conviction. *State v. Salois*, 235 Mont. 276, 279-80, 766 P.2d 1306, 1309 (1988). Although we have repeatedly stated that testing at a state crime lab is preferred, the testimony of witnesses experienced in identifying dangerous drugs may provide sufficient evidence to support a conviction. *Salois*, 235 Mont. at 281-82, 766 P.2d at 1310; *State v. Ostwald*, 180 Mont. 530, 540, 591 P.2d 646, 652 (1979). Circumstantial evidence may also support the conclusion that a substance is a dangerous drug. *State v. Henrich*, 268 Mont. 258, 269, 886 P.2d 402, 409 (1994) (citing *State v. Dunn*, 155 Mont. 319, 472 P.2d 288 (1970)).

¶9 Very few of our cases addressing the identification of a substance as a dangerous drug, however, have involved a substance that was never even seen by law enforcement officers. Rather, the majority of our cases have addressed challenges to field identifications by experienced officers. In *Paulson*, a substance suspected to be marijuana was seized by an officer with experience in nearly 200 drug possession cases. *State v. Paulson*, 167 Mont. 310, 313, 538 P.2d 339, 341 (1975). He was able to identify marijuana by sight and smell and had been trained in the use of a field test kit. *Paulson*, 167 Mont. at 313, 538 P.2d at 341. He performed a field test which identified the substance as marijuana. *Paulson*, 167 Mont. at 313, 538 P.2d at 341. His identification

was corroborated by a second officer with similar experience who was present at the scene and observed the substance. *Paulson*, 167 Mont. at 313, 538 P.2d at 341.

¶10    In *Ostwald*, officers seized two cigarettes which they suspected contained marijuana. 180 Mont. at 532, 591 P.2d at 648. The substance was field tested by an officer, with positive results. *Ostwald*, 180 Mont. at 532, 591 P.2d at 648. The officer testified that he was experienced in drug possession cases, and that his identification of the substance was based on his recognition of "the characteristic odor of marijuana" in addition to the results of the field test. *Ostwald*, 180 Mont. at 540, 591 P.2d at 652.

¶11    In *Salois*, officers conducted a search of a home and discovered 71 bags of marijuana in the master bedroom, a 423-gram "block" of marijuana in the closet, rolling papers in the living room and kitchen, a plastic bag of marijuana and a pipe in the back bedroom, and another pipe in the defendant's vehicle. 235 Mont. at 278, 766 P.2d at 1307-08. Officers detected the "strong aroma of marijuana smoke" upon entering the residence. *Salois*, 235 Mont. at 277, 766 P.2d at 1307. The 71 bags and the 423-gram "block" of marijuana were tested at the state crime lab, but the contents of the plastic bag found in the back bedroom were not. *Salois*, 235 Mont. at 279, 766 P.2d at 1308-09. The bag was produced at trial and an officer trained in drug investigations testified to his opinion that the structure and color of the seeds, stems, and leaves was consistent with marijuana. *Salois*, 235 Mont. at 280, 766 P.2d at 1309. A forensic scientist from the state crime lab, who had performed an estimated 2,000 tests to identify marijuana, also examined the substance and testified to her opinion that it was marijuana. *Salois*, 235 Mont. at 280-81, 766 P.2d at 1309-10.

¶12 In *Godsey*, an officer seized a plastic bag containing what appeared to be marijuana from the front seat of a vehicle. *State v. Godsey*, 202 Mont. 100, 102, 656 P.2d 811, 812 (1982), *overruled on other grounds*, *State v. Loh*, 275 Mont. 460, 914 P.2d 592 (1996). The defendant challenged the sufficiency of the evidence when the contents of the bag were not introduced at trial. *Godsey*, 202 Mont. at 106, 656 P.2d at 814. The substance had already been tested by the state crime lab, however, and determined to be marijuana. *Godsey*, 202 Mont. at 107, 656 P.2d at 815. The marijuana was not offered at trial because the parties agreed to stipulate that evidence from a suppression hearing, including the bag of marijuana, would be deemed to have been submitted at trial. *Godsey*, 202 Mont. at 107, 656 P.2d at 815.

¶13 In only one case have we held that there was sufficient evidence to establish that a suspected substance was a dangerous drug, despite the fact that the substance had never been in the possession of law enforcement officers. *Dunn*, 155 Mont. at 334-35, 472 P.2d at 297-98. In *Dunn*, the defendant was convicted of the criminal sale of dangerous drugs after allegedly supplying LSD to two teenage girls. 155 Mont. at 321-22, 472 P.2d at 290-91. The suspected substance was not available for analysis because the girls had ingested it immediately. *Dunn*, 155 Mont. at 322, 472 P.2d at 291. One girl testified that she consumed half of a small orange pill, after which she experienced an effect that she described as "time speeded up." *Dunn*, 155 Mont. at 332, 472 P.2d at 296. The effects of the substance lasted for several hours. *Dunn*, 155 Mont. at 332, 472 P.2d at 296. She also testified that the second girl had taken a whole pill. *Dunn*, 155 Mont. at 332, 472 P.2d at 296.

6

¶14　The second girl corroborated that she had taken a whole pill. *Dunn*, 155 Mont. at 332, 472 P.2d at 296. She experienced an effect consistent with that described by her friend, but more pronounced. *Dunn*, 155 Mont. at 332, 472 P.2d at 296. She testified that she could see vibrations around her body, and colors and sounds were intensified. *Dunn*, 155 Mont. at 333, 472 P.2d at 296. Her pupils were "extremely dilated." *Dunn*, 155 Mont. at 333, 472 P.2d at 296. The effects lasted until early the next morning. *Dunn*, 155 Mont. at 333, 472 P.2d at 296.

¶15　The girls' description of the substance and its effects was further corroborated by the father of one of the girls, who had observed that his daughter was "completely disoriented." *Dunn*, 155 Mont. at 333, 472 P.2d at 296. The girls' account was also analyzed by an expert witness, who gave his medical opinion, based on his past experience and observations, that the pills were LSD or a similar hallucinogenic drug. *Dunn*, 155 Mont. at 333, 472 P.2d at 297.

¶16　By contrast, in the only other case in which we have addressed the identification of a substance that was never observed by law enforcement officers, we held that the evidence was insufficient where the State offered only the testimony of a single lay witness, supported by evidence that the defendant had access to a dangerous drug for medical reasons. *Henrich*, 268 Mont. at 269-70, 886 P.2d at 409.

¶17　In *Henrich*, the defendant was charged with endangering the welfare of a child by supplying his daughter with methamphetamine that had been prescribed to him. 268 Mont. at 269, 886 P.2d at 408-09. The substance was not available for analysis because the girl had consumed it. *Henrich*, 268 Mont. at 269-70, 886 P.2d at 409. The State did

7

not produce the pill bottle or an expert analysis of the girl's description of the substance. *Henrich*, 268 Mont. at 269-70, 886 P.2d at 409. The girl testified only that after ingesting the substance, "she shook, was wide awake, and . . . her hair tingled . . . ." *Henrich*, 268 Mont. at 270, 886 P.2d at 409. There were no other lay witnesses, as in *Dunn*, to corroborate her testimony. *Henrich*, 268 Mont. at 270, 886 P.2d at 409. We held that this evidence was not sufficient to support a conviction. *Henrich*, 268 Mont. at 270, 886 P.2d at 409.

¶18 In this case, as in *Henrich*, the State presented only the uncorroborated testimony of a single lay witness, Jones, supported by evidence that Burwell had access to marijuana for medical reasons. Unlike in *Dunn*, no expert witness analyzed Jones's description of the substance; no additional lay witnesses corroborated her testimony; and she did not describe the effects of the substance, the duration of those effects, or the amount of the substance she ingested. Jones is not an officer trained in the identification of dangerous drugs or an experienced lab technician. She did not perform a field test. She did not describe the characteristic leaf or aroma of marijuana. She did not even testify that she got high from smoking it. She testified only that the substance was "green with orange hairs." We hold that this evidence was insufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that the substance in question was a dangerous drug.

¶19 For the reasons stated above, Burwell's conviction of criminal distribution of dangerous drugs is reversed.

/S/ MIKE McGRATH

We concur:

/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS

Justice Jim Rice, dissenting.

¶20   In an analysis of the sufficiency of the evidence, it is particularly important to examine all the evidence before the trier of fact, yet the Court ignores significant circumstantial evidence that was presented at trial. A conviction may be overturned for insufficient evidence only after viewing all the evidence presented, in the light most favorable to the prosecution, to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Henrich*, 268 Mont. at 268, 886 P.2d at 408. The weight and credibility of evidence is exclusively within the province of the jury. *Henrich*, 268 Mont. at 268, 886 P.2d at 408. "A single witness' testimony is sufficient to prove a fact, and the State may use circumstantial evidence to prove any element of an offense." *State v. Kaske*, 2002 MT 106, ¶ 25, 309 Mont. 445, 47 P.3d 824 (citation omitted). "When circumstantial evidence is susceptible to two interpretations, one which supports guilt and the other which supports innocence, the trier of fact determines which is the most reasonable." *State v. Bernhardt*, 249 Mont. 30, 32, 813 P.2d 436, 437 (1991). Conflicting testimony does not render the evidence

9

insufficient to support a conviction. *State v. Wood*, 2008 MT 298, ¶ 43, 345 Mont. 487, 191 P.3d 463.

¶21     At trial, it was undisputed that Jones babysat for Burwell while he went to work at a fencing job. Additional testimony, not mentioned by the Court, is as follows. Burwell asserted that he agreed to pay Jones in cash for the babysitting after he was paid for the fencing job. He had not worked any other job for the entire summer so did not have any money with which to pay her until after he was paid for this job. However, in addition to admitting that he did not pay Jones in cash that night, he claimed that Jones simply failed to ever return to collect her cash payment for the babysitting job, so he never paid her anything. From its beginning, Burwell's story made no sense, and it is not surprising that the jury rejected it.

¶22     Additionally, Burwell admitted that at the time Jones stated she received the marijuana from him, he and his son "were allowed to grow [their] own plants by state law. And after the law changed, we got rid of our plants and stuff; but at that time we were able to grow our own." Thus, the substantial amount of marijuana in the home at that time provided further circumstantial evidence against Burwell.

¶23     It was up to the jury to decide whether to believe Jones's version of events or Burwell's. The jury accepted Jones's version, and as such there needed to be sufficient evidence from which they could conclude that the substance Burwell gave to Jones was marijuana and not some other substance. Unlike the situation in *Henrich*, where a minor with no prior history of methamphetamine use testified as to the identity of the substance with no other circumstantial evidence, Jones testified to having experience with

10

marijuana and its effects, necessarily including familiarity with the appearance, smell, and characteristics. Jones's direct testimony that she recognized the substance she received from Burwell as marijuana due to her prior experience with smoking marijuana, along with her testimony that she and Burwell smoked some together is sufficient for a rational trier of fact to conclude that the substance she received was in fact marijuana. Additionally, Jones's testimony was supported by circumstantial evidence that Burwell did not have money to pay Jones in cash due to only having one odd job all summer, never paid her or attempted to pay her in cash, and had access to marijuana plants due to being a medical marijuana cardholder who, at that time, grew his own plants.

¶24    "[M]arijuana is not difficult to characterize without chemical analysis." *Salois*, 235 Mont. at 282, 766 P.2d at 1310 (citations omitted); *State v. Nichols*, 1998 MT 271, ¶ 7, 291 Mont. 367, 970 P.2d 79; *State v. Ostwald*, 180 Mont. 530, 540, 591 P.2d 646, 652 (1979) (citing William A. Harrington, *Sufficiency of Prosecution Proof that Substance Defendant is Charged with Possessing or Selling, or Otherwise Unlawfully Dealing in, is Marijuana*, 75 A.L.R.3d 717 (1977)); *see also In re Ondrel M.*, 918 A.2d 543 (Md. Spec. App. 2007) ("A witness need only to have encountered the smoking of marijuana in daily life to be able to recognize the odor."). We have previously held that matters of common knowledge and observation, such as intoxication, can be presented to the jury by a lay witness so long as the lay witness testifies from personal knowledge. *Meinecke v. Intl. Transp. Co.*, 101 Mont. 315, 322, 55 P.2d 680, 681 (1936); *State v. Carter*, 285 Mont. 449, 456, 948 P.2d 1173, 1177 (1997). Similar to allowing a lay witness to testify about the nature of alcohol and intoxication, I would hold the testimony

here, of a lay witness identifying marijuana from prior experience with the drug, along with the confirming circumstantial evidence, is sufficient to establish the identity of the substance.

¶25 While Burwell's version of events clearly differs from Jones's, it was up to the jury to determine the facts. Upon consideration for sufficiency of the evidence, I would hold that sufficient evidence was presented for the jury to find Burwell guilty beyond a reasonable doubt of criminal distribution of dangerous drugs.

¶26 I dissent.

/S/ JIM RICE